## Mark Campisano et al. *v.* P. J. Nardi, Jr.
## (13627)

Peters, C. J., Shea, Callahan, Glass and Covello, Js.

Argued June 8—decision released July 25, 1989

*Sperry A. DeCew,* for the appellants (plaintiffs).

*David Fite Waters,* with whom was *Beverly M. Kriegler,* for the appellee (defendant).

PETERS, C. J. The principal issue in this appeal is whether the sole shareholder, officer and director of a corporation that has been dissolved by forfeiture can be held personally liable for the breach of a contract entered into by the corporation prior to its dissolution. The plaintiffs, Mark Campisano and Marsha McCoy, brought a two count cause of action against the defendant P. J. Nardi, Jr., charging him with breach of contract and fraud in relation to a contract that they had executed with P. J. Nardi, Jr., Inc., a corporation.[1] The parties tried the case before attorney state trial referee Dennis G. Eveleigh, who recommended judgment in favor of the defendant on both counts. The trial court accepted the referee's findings of fact and rendered judgment for the defendant. The plaintiffs appealed to the Appellate Court, and we transferred the case here pursuant to Practice Book § 4023. We find no error.

The referee made the following findings of fact. The defendant was the sole shareholder, officer and director of P. J. Nardi, Jr., Inc. (the corporation). As president of the corporation, the defendant had exclusive authority to execute contracts and to issue checks on behalf of the corporation, and had at times paid his personal obligations from the corporation's accounts. On February 6, 1985, the plaintiffs executed a contract with the corporation for work on their home in Darien.

---

[1] A third count, alleging a fraudulent conveyance by the defendant, P.J. Nardi, Jr., to another defendant, Mary Jane Nardi, was bifurcated by the trial court, *Emmett, J.,* for trial following the conclusion of this case.

Subsequently, in April or May, 1985, the secretary of the state dissolved the corporation by forfeiture, pursuant to General Statutes § 33-387, for failure to comply with certain statutory requirements governing Connecticut corporations.

The defendant continued to work on the plaintiffs' home until late May, 1986. During this time, the plaintiffs made progress payments of $90,225 toward the total contract price of $121,442; these payments were made by means of checks payable to the corporation. On July 1, 1986, following the defendant's failure to appear at the job site during June, the plaintiffs terminated the contract.

The plaintiffs then commenced suit. In the first count, the plaintiffs alleged that the defendant had breached the contract by causing inordinate delay and by failing to complete the job. In the second count, they claimed that the defendant had committed fraud by misrepresenting his intent to use part of a $15,000 progress payment to pay two subcontractors.

The referee found that, although the plaintiffs had justifiably discharged the defendant because the contract was not completed within the time period specified therein, they were not entitled to prevail in their suit for damages. The referee premised his recommendation of judgment in favor of the defendant on three findings that are of central importance to the outcome of this case. First, he found that the defendant was winding up the corporation in the period following its forfeiture. Second, he found that the plaintiffs had failed to prove that the defendant had made the alleged misrepresentations concerning the progress payment. Third, he found that the plaintiffs had not shown that the defendant had used his control over his corporation to commit a fraud or other wrongful act. He concluded, therefore, that the plaintiffs could not hold the

defendant individually liable, because their contract was with the corporation and because the defendant's personal conduct had not been shown to be fraudulent or wrongful. The trial court accepted the referee's recommendations and rendered judgment in favor of the defendant.

On appeal, the plaintiffs argue that the referee's factual findings and legal conclusions are erroneous in two respects. First, the plaintiffs contend that, in light of the evidence presented at trial, the referee erred in finding that the defendant did not commit fraud. Second, the plaintiffs argue that the referee should have found the defendant personally liable for the corporation's breach of contract based upon his continued operation of the business after its forfeiture or on a finding that the corporation was the defendant's personal instrumentality.

## I

The plaintiffs' first claim of error contests the validity of the referee's finding that the plaintiffs failed to prove their allegation of fraud. The plaintiffs contend that the evidence establishes that, on January 20, 1986, the defendant demanded a $15,000 progress payment and represented that he would apply the payment toward a $4500 invoice from the electrical subcontractor and a $5500 invoice from the mechanical subcontractor. The plaintiffs further claim that, while they made the payment in reliance on this representation, the defendant did not apply the payment to obligations owing to the subcontractors. The plaintiffs assert that they clearly met their burden of proving fraud and that the referee could not reasonably have found to the contrary. We are unpersuaded.

As the plaintiffs concede, fraud must be proved by clear, precise and unequivocal evidence. *Miller* v. *Appleby,* 183 Conn. 51, 55, 438 A.2d 811 (1981); *Creel-*

*man* v. *Rogowski,* 152 Conn. 382, 384, 207 A.2d 272 (1965). Furthermore, because proof of fraud turns on findings of fact, we will not overturn the referee's finding unless it is clearly erroneous in light of all the evidence and the pleadings. Practice Book § 4061; *Miller* v. *Appleby,* supra; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 219–22, 435 A.2d 24 (1980). Such deference to the factfinder is particularly warranted where, as here, the dispute involves the assessment of the credibility of witnesses.

Our review of the record in this case convinces us that the referee was not clearly erroneous in his finding that the plaintiffs failed to prove that the defendant had committed fraud. The referee heard conflicting evidence from the parties about whether the defendant, at the January 20 meeting, had represented an intention that the $15,000 progress payment would be applied to paying the subcontractors whose invoices he had shown to the plaintiffs. The defendant conceded that he had not used these monies to pay these subcontractors. He testified, however, that he had never committed himself to such an allocation of these funds. He maintained that he had displayed the invoices to the plaintiffs to demonstrate the work that had been completed and thus to justify his entitlement to further payment. The credibility of the plaintiffs' version of what had transpired was undermined by their failure to elicit corroborative testimony from their architect on the subject of the alleged misrepresentation, despite his presence at the meeting and his availability at trial. Finally, notwithstanding the suggestions of plaintiffs' counsel in his cross-examination of the defendant, there was no evidence that the defendant had diverted the progress payment to his personal use. In these circumstances, the referee's finding on the fraud count must be upheld.

## II

The plaintiffs next contend that the referee erroneously rejected their claim that the defendant should be held personally liable for breach of contract. Despite the acknowledged fact that they entered into a contract with P. J. Nardi, Jr., Inc., the corporation, they maintain that the defendant is liable for the corporation's breach because (1) he continued to conduct his business as usual after the corporation had been forfeited and (2) the corporation was never more than a mere instrumentality of the defendant. In the absence of the necessary factual predicate for either of these arguments, we find no error in the contrary rulings by the referee and the trial court.

### A

In pursuit of their claim that corporate forfeiture imposed personal liability upon the defendant, the plaintiffs contend that the defendant's activities, subsequent to his corporation's dissolution for noncompliance with the Connecticut corporation laws, did not constitute the kind of winding up contemplated by our statutes. The difficulty with this contention is that the referee made a diametrically opposite finding of fact.

The plaintiffs acknowledge that, after its dissolution, while a corporation is engaged in winding up its activities in accordance with General Statutes § 33-378[2] it continues to exist as a corporation and to confer personal immunity upon its shareholders and officers.

[2] General Statutes § 33-378 provides in pertinent part: "EFFECT OF DISSOLUTION. (a) Dissolution terminates the corporate existence of the dissolved corporation.

"(b) A dissolved corporation shall cease to carry on its business and shall do only such acts as are necessary or expedient to collect, convey and dispose of such of its properties as are not to be distributed in kind to its shareholders, pay, satisfy and discharge or make adequate provisions for its

Under this statute, a dissolved corporation must cease to carry on its business, but may "wind up its business and affairs as expeditiously as practicable, and for such purpose it shall continue as a corporation." General Statutes § 33-378 (b). Since a fundamental attribute of the corporate form is that it shields the shareholders, directors and officers from personal liability, it necessarily follows that the defendant in this case is protected by the corporate shield and cannot be held personally responsible for the liabilities of the corporation, if he was engaged in winding up his corporation.

The referee expressly found that the defendant, in his individual conduct of the corporate business after the corporation's forfeiture, was winding up the corporate affairs. The plaintiffs cannot overturn this finding of fact unless they can demonstrate that it is clearly erroneous. Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 219–22. The record, however, amply supports the referee's finding. The defendant testified that he had entered into no new contracts following the forfeiture, but had concentrated his efforts exclusively on finishing the plaintiffs' job and one other unfinished contract. He further testified that his business was in severe financial difficulty and that

liabilities and obligations, distribute its assets, and adjust and wind up its business and affairs as expeditiously as practicable, and for such purpose it shall continue as a corporation."

This section applies to dissolution by forfeiture as well as other forms of corporate dissolution by virtue of General Statutes § 33-375, which provides: "METHODS OF DISSOLUTION OF CORPORATION. A corporation may be dissolved: (1) By resolution in accordance with the proceedings provided for in section 33-376; or (2) by expiration of any period of duration to which the corporation is limited by its certificate of incorporation; or (3) by a decree of dissolution entered pursuant to the provisions of section 33-383 in judicial proceedings to wind up the business and affairs of the corporation on petition to the superior court in accordance with the provisions of section 33-382; or (4) *by forfeiture action by the secretary of the state pursuant to the provisions of section 33-387;* or (5) by proceedings by the attorney general in the nature of quo warranto." (Emphasis added.)

he was in the process of selling some of its property in order to pay off its debts. These activities fall squarely within the definition of winding up that the plaintiffs have themselves proffered: "[W]inding up is the process of closing out a corporation's business and affairs. The process often involves the liquidation of properties, settlement of claims, provision for the payment of debts following dissolution, and then distribution of what remains of the assets to shareholders or members, or to others entitled to them." S. Cross, Corporation Law in Connecticut (1972) § 9.5, pp. 476–77.

The plaintiffs maintain, however, that two facts preclude a finding that the defendant was winding up the corporation: first, that the defendant continued working on their home and accepted payments under the contract well beyond the date of dissolution; and second, that the defendant had not yet complied with the notice requirements of the winding up statute, General Statutes § 33-379. We do not agree.

The fact that the defendant sought to complete his existing contractual obligations and accepted payment for the work is entirely consistent with an effort to wind up the corporation. Had he succeeded, he would have eliminated a claim against the corporation, thereby preserving some of the corporation's assets for distribution when he completed the winding up.

Likewise, the fact that the defendant had not yet sent out the required notices does not prove that he was not in the process of winding up the business. The principal purpose of the notice requirement is to inform those having claims against the corporation that its assets will soon be distributed and that any claims that are not asserted will be barred after the distribution. Since the defendant still had work to complete on existing contracts, he was not yet ready to distribute the assets of the corporation, and notice was therefore not

yet necessary. Significantly, the notice statute does not require that notice be sent within a fixed time, but instead provides for notice to be made "[a]t any time after the dissolution of a corporation." General Statutes § 33-379 (d). In addition, this court has previously refrained from imposing a strict time limit on the completion of winding up activities. *Stolman* v. *Boston Furniture Co.,* 120 Conn. 235, 244, 180 A. 507 (1935); S. Cross, supra, § 9.5, p. 476.

Viewed in its entirety, the evidence at trial demonstrates that the referee's finding of a winding up was not clearly erroneous. There is no finding that the defendant violated any statutory notice requirement, and there is substantial evidence that his activities were consistent with the statutory requirement for winding up the business of the corporation.

Because the question of the relationship between corporate dissolution and personal liability is an issue that the legislature is clearly entitled to resolve, the plaintiffs' reliance on case law construing the statutes of other states is misplaced. It bears emphasis, however, that none of the authorities that the plaintiffs have cited supports a result contrary to that required by Connecticut's statute. The cases cited all deal with situations in which liability was imposed on an individual who was found to have continued to operate the business as usual, rather than to have wound up the corporation. See, e.g., *In re Hare,* 205 F. Sup. 881, 883 (D. Md. 1962); *J. M. Lynne Co.* v. *Geraghty,* 204 Conn. 361, 366–67, 528 A.2d 786 (1987) (applying New York law); see also 16A W. Fletcher, Cyclopedia Corporations (1988 Rev.) §§ 8132, 8132.1, pp. 402–10. In this case, by contrast, the trial court found that the defendant was engaged in winding up the corporation. Moreover, this case involves a contractual obligation incurred prior to the dissolution, and not in the period following dissolution, a distinction to which this court attached sig-

nificance in *J. M. Lynne Co.* v. *Geraghty,* supra, 375 n.5.[3] The plaintiffs therefore cannot prevail on their contention that dissolution of the corporation by statutory forfeiture imposed personal liability on this defendant in the circumstances of this case.

## B

The plaintiffs further argue, in the alternative, that the defendant should be held personally liable under the instrumentality rule. The instrumentality rule imposes individual liability for corporate actions upon a shareholder, director, or officer of a corporate entity that is, in economic reality, the instrumentality of the individual. *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* 187 Conn. 544, 552–53, 447 A.2d 406 (1982); *Saphir* v. *Neustadt,* 177 Conn. 191, 209–10, 413 A.2d 843 (1979); *Zaist* v. *Olson,* 154 Conn. 563, 573, 227 A.2d 552 (1967). We have consistently held that " '[t]he instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately

[3] It is also instructive that a former Connecticut statute did impose personal liability on officers and directors of a corporation who failed to file an annual certificate showing the condition of the corporation, an early predecessor of the annual report. General Statutes (1838 Rev.) tit. 14, § 21. That the statute has been repealed and replaced by the current legislation, Public Acts 1903, c. 194, §§ 37, 91, is highly probative evidence that the legislature does not wish to impose personal liability for failure to meet such statutory requirements as the filing of annual reports.

cause the injury or unjust loss complained of.' " *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, supra, 553; *Zaist* v. *Olson*, supra, 573.

The referee found that the instrumentality rule did not apply in this case. Although it was undisputed that the defendant exercised the kind of control over the corporation that would satisfy the first element of the instrumentality rule,[4] the referee found that the plaintiffs had failed to prove the second element, namely that the defendant had used his control over the corporation to commit a fraud or some other wrong or injustice. The plaintiffs challenge this finding, contending that the referee erroneously assumed that only proof of fraud would satisfy this second element. The plaintiffs are correct that our cases have not construed the governing legal principles so narrowly. We do not agree, however, with their contention that the referee misconstrued the law in making his finding.

The second element of the instrumentality test addresses the kind of misconduct that will impose personal liability on an individual who has exercised complete domination over a corporation in total disregard of its existence as a separate entity. We have found such misconduct, even absent fraud or illegality, when the individual in control has used a corporate instrumentality to avoid personal liability that he had previously assumed. *Saphir* v. *Neustadt*, supra, 211; *Zaist* v. *Olson*, supra, 578. What other circumstances will demonstrate "[a] fraud or wrong . . . the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights"; *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.*, supra, 553; must depend upon the fac-

---

[4] The defendant has not challenged the plaintiffs' allegations that he was the sole shareholder, director and officer of the corporation, that he exercised exclusive authority over it, and that the corporation never issued any stock, held any meetings, or maintained corporate records.

tual background of the particular case. See 1 W. Fletcher, Cyclopedia Corporations (1983 Rev.) § 41.30, pp. 428–32.

The referee's factual finding that the plaintiffs failed to establish a crucial precondition for the instrumentality rule. must ordinarily be sustained unless it is clearly erroneous. *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,* supra, 562; *Vogel* v. *New Milford,* 161 Conn. 490, 494, 290 A.2d 231 (1971). The plaintiffs maintain, however, that the finding must be overturned, not so much for evidentiary insufficiency, but because the referee erroneously confined his attention to their allegation of fraudulent conduct by the defendant and overlooked their claim that the corporation's breach of its contract constituted a breach of a "positive legal duty" and an "unjust act in contravention of [their] legal rights." Although the referee's finding emphasized that fraud was not proven, it was couched in the proper legal terms of reference, and correctly articulated that the test was whether individual control had been used "to commit fraud or wrong." The trial court, in sustaining the referee's findings, similarly determined that the "plaintiffs had failed to sustain their burden of proof that the individual defendant, P. J. Nardi, Jr., committed fraud on or a dishonest act against the plaintiffs so as to implicate the instrumentality rule." On this record, we conclude that the referee applied the correct legal standard in finding the instrumentality rule inapplicable.

Implicit in the plaintiffs' claim of error is the proposition that the instrumentality rule is triggered whenever individual control of a corporation is coupled with a breach of contract by the corporation. We know of no authority for so far-reaching a proposition. The plaintiffs do not claim that the defendant used his control over the corporation in order to commit or to avoid liability for any personal wrongful act. Unlike *Saphir*

294

v. *Neustadt,* supra, the plaintiffs have neither alleged
nor shown that the defendant formed the corporation
in order to shelter himself from personal obligations
incurred prior to the formation of the corporation.
Instead, this case more closely resembles *Kulukundis*
v. *Dean Stores Holding Co.,* 132 Conn. 685, 47 A.2d
183 (1946), and *Angelo Tomasso, Inc.* v. *Armor Con-
struction & Paving, Inc.,* supra, in which we declined
to apply the instrumentality rule where the corpora-
tions were formed for legitimate purposes and the par-
ties engaging in transactions with those corporations
were fully aware of the type of business with which they
were dealing. In the absence of a claim that the corpo-
ration was formed for an improper purpose, or that the
plaintiffs were improperly induced to enter into a con-
tract with the corporation,[5] the mere breach of a cor-
porate contract cannot of itself establish the basis for
application of the instrumentality rule.

There is no error.

In this opinion the other justices concurred.

[5] The plaintiffs are both educated individuals, one of them a tax attor-
ney familiar with corporate law. They never claimed that they had been
unaware that their contract was with the corporation; indeed, the referee
found that they had made progress payments to the corporation.