[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves whether corporate officers can be held personally liable on a promissory note payable to the plaintiff, Paul Huchro, which they executed on behalf of the defendant corporation, Strategic Acquisition Company (Strategic). The plaintiff loaned $10,000 to Strategic. The note, which is dated May 9, 1990, was signed by the individual defendants as follows: "Strategic Acquisition Company By John W. Luther, III, President; David G. Heller, Vice Pres.; James A. Morrissey, Vice Pres.; Mace L. Rattet, General Manager."
The plaintiff brought a four count complaint against both Strategic and the individual defendants. The action was subsequently withdrawn as to Luther. In the first count of his complaint, the plaintiff alleges that he loaned $10,000 to the "Defendant Corporation through its principals," ie., the individual defendants, and that the note had not been repaid. In the second count, the plaintiff alleges that because of a "unity of interest" between the individual defendants and the corporation, Strategic was not a separate, independent entity. The plaintiff also claims in this count that the individual defendants had complete control over Strategic, and therefore, the corporation had "no separate mind, will or existence of its own [and] that the defendants used such control to perpetrate unjust acts which caused injuries and loss to the plaintiff." In the third count, the plaintiff claims that the defendants made material misrepresentations that the plaintiff would receive repayment of his loan, and also that defendant Morrissey personally promised repayment of the loan to the plaintiff. In the fourth count, the plaintiff contends that the defendants violated General Statutes § 42-110 et seq., the Connecticut Unfair Trade Practices Act (CUTPA). In addition to monetary damages, in his claims for relief, the plaintiff seeks an "order" that the corporate veil of Strategic be "pierced," and that CT Page 2959 punitive damages and attorney's fees pursuant to CUTPA be awarded. Strategic admits that the loan has not been repaid, but the individual defendants deny any personal liability.
Thus, the issue in this case is whether the plaintiff can successfully "pierce the corporate veil" in order to hold the individual defendants liable. One theory of piercing the corporate veil involves the so-called "identity rule." In UnitedElectrical Contractors, Inc. v. Progress Builders, Inc., 26 Conn. App. 749,756, 603 A.2d 1190 (1992), the court indicated that the identity rule may be invoked to disregard or pierce a corporate veil in order to prevent injustice if two corporate entities are "controlled as one enterprise because of the existence of common owners, officers, directors or shareholders and because of the lack of observance of corporate formalities between the two entities." (Citations omitted; internal quotation marks omitted.) Although the identity or "alter ego" doctrine can be employed to hold an individual liable; Klopp v. Thermal-Sash, Inc., 11 Conn. App. 218,221, 526 A.2d 550 (1987); its primary application is to reach beyond the veil of one corporation to another corporation. The doctrine has no application to the facts of this case where only one corporation is involved.
The other theory or basis for imposing personal liability on an individual is premised on the "instrumentality" rule. The plaintiff has the burden of proving that the, corporate veil should be pierced. Campisano v. Nardi, 212 Conn. 282, 292,562 A.2d 1 (1989). In order to pierce the corporate veil, three elements must be proved: "(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." Id., 291-92.
In this case, the "corporate veil" cannot be "pierced" because the plaintiff has failed to prove that the individual defendants committed fraud, a wrong or a violation of any duty. There were approximately fifteen investors, of which the plaintiff was one. At one point each investor received a similar CT Page 2960 percentage payment from the corporation, about 8% on their investment, but the business simply was not doing well enough to repay the loans in their entirety. There is no fraud, injustice, or violation of a duty or a dishonest act. Campisano v. Nardi,
supra, 212 Conn. 292. If the plaintiff wanted to impose individual liability on the defendants he should have obtained their personal guarantees of the corporation's debt. In the absence of a guarantee, it is the opinion of this court that the individual defendants are not liable under either theory permitting the piercing of the corporate veil. This is simply a case where a person took a chance, and loaned money to a new business, the business did not prosper, and the investor is unable to get his money back.
The plaintiff has advanced several other theories for imposing personal liability on the individual defendants. First that the money was loaned before the corporation came into existence. Second, that Morrissey personally promised to pay the debt to the plaintiff. Third, that the corporation failed to comply with certain state law requirements. The plaintiff claims the individual defendants were "promoters" because the corporation came into existence on or about June 25, 1990, approximately six weeks after the loan, and hence, they are individually liable. Under the plaintiff's theory any investment or loan made prior to actual incorporation would be the personal responsibility of the promoters or the people forming the corporation.
No Connecticut case was located regarding the liability of a promoter for a loan made to a corporation before it actually came into existence by receiving a certificate of incorporation. However, it seems apparent that the plaintiff believed he was dealing with a corporation, and was looking to the corporation for repayment. He was given a prospectus regarding the corporation's plans prior to his loan. He was asked whether he understood "that you were loaning the money to Strategic Acquisition Company?" Answer: "Yes." "Promoters are not personally liable if it is understood that the other party shall look to the corporation only, provided the contract is one adoptable by the corporation." Fletcher, Cyclopedia Corporations, Vol. 1A (1993), § 190, p. 328.
The doctrine of a de facto corporation would appear to apply to this case. The defendants were in the process of forming a corporation and did form one. They were raising money in order to CT Page 2961 start a retail business. "A de facto corporation is an apparent corporate organization asserted to be a corporation by its members and actually existing as such, but lacking the creative fiat of the State. A de facto corporation . . . is an association which actually exists for all practical purposes as a corporate body, but which, because of failure to comply with some provision of the law, has no legal right to corporate existence as against a direct attack by the State." DiFrancesco v. Kennedy, 114 Conn. 681,687-88, 160 A. 72 (1932). In Tiernan v. Savin Rock RealtyCo., 115 Conn. 473, 482, 162 A. 11 (1932), the court held that the contracts entered into before the company obtained a certificate of incorporation were not thereby nullified and the company could acquire and convey realty. Furthermore, those who deal with a de facto corporation are estopped to deny its corporate existence. Clark-Franklin-Kingston Press, Inc. v.Romano, 12 Conn. App. 121, 128, 529 A.2d 240, cert. denied,205 Conn. 803, 531 A.2d 940 (1987). "The acts of the plaintiff . . . done in reliance on the corporate existence of the corporation, prevent it from now claiming that the defendants had no corporate existence." Id., 126. Because of the corporation's de facto status, "it would be inequitable to impose personal liability" on the individual shareholders. Id., 125.
In regard to Morrissey's alleged promise to personally pay the corporate debt, the transcript reveals that he specifically denied any such promise. When pressed on cross examination the plaintiff at one point stated that Morrissey "did not say specifically he would pay the money out of his pocket." On another occasion, the plaintiff testified that Morrissey "did not say `I personally will pay you back.'" Morrissey testified that he told the plaintiff "I would . . . do my best to pay him back. I did not personally guaranty paying him back." The court finds that Morrissey made no promise to personally pay the corporation's debt to the plaintiff.
It is true that Strategic did not comply with all the statutory requirements for a corporation, including failing to file biennial reports and notifying the secretary of the state about the removal of a corporate officer, by transacting business before incorporation, and by using its name improperly. See General Statutes §§ 33-298, 33-453, 33-295, 33-287. However, the failure to observe these requirements does not mean the individual defendants are liable to repay money loaned to the corporation. There is no evidence that the secretary of state CT Page 2962 dissolved the corporation by forfeiture for failure to comply with the statutory requirements governing corporations. In any event, the contractual obligation at issue was clearly not incurred during any such dissolution of the corporation. Cf.Campisano v. Nardi, supra, 212 Conn. 287-91 (holding that the defendant, the sole stockholder, director and officer of the corporation, was not personally liable for a contractual obligation incurred prior to the statutory forfeiture of the corporation, which obligation the defendant completed while winding up the corporation).
Accordingly, judgment enters in favor of the plaintiff in the first count of the complaint against the corporate defendant only for $10,000 principal due on the note, plus interest[1] and in favor of the individual defendants with respect to the other counts.
Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 28th day of March, 1995.
William B. Lewis, Judge