[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On August 12, 1994, the plaintiff, Jan Weinberg, appearing pro se, filed a complaint in eight counts against eighty-two of the officers and directors of CIGNA Corporation (CIGNA), collectively referred to herein as the defendants, for their alleged wrongful refusal to settle his claim against Management Company Entertainment Group, Inc. (MCEG). On September 28, 1994, the defendants filed a motion to strike the entire complaint which was granted on May 8, 1995. On May 23, 1995, the plaintiff filed a nine count amended complaint. The plaintiff alleges that the defendants are the officers and directors of CIGNA, that CIGNA Insurance Company (CIC) is a wholly owned subsidiary of CIGNA, and that at all relevant times CIGNA and CIC have been "completely dominated by the defendants, who, as officers and directors of CIGNA, completely control the finances and business practices of CT Page 14422 CIGNA and CIC. By virtue of their positions as officers or directors of CIGNA, these defendants are liable for the claims herein because they have either expressly directed CIGNA and CIC to take the actions complained of herein, or they have consented to, approved and knowingly ratified such activities." (Amended Complaint, ¶ 5.)
In brief, the plaintiff alleges that on December 31, 1987, the plaintiff and his partner agreed to sell 90% of the common shares of Forum Home Video Corporation (Forum) to Management Company Entertainment Group, Inc. (MCEG). In return, the plaintiff received a new issue of 200 preferred shares of Forum, the option to purchase 210,000 shares of common stock in MCEG, and the right to put his preferred shares to MCEG at a future date. On December 31, 1988, the plaintiff alleges that he entered into a second written agreement with MCEG pursuant to which MCEG agreed to purchase controlling interest in eleven companies known as the Pickwick Companies that were owned by the plaintiff, for consideration of $10 million and other promises. The plaintiff further alleges that MCEG transferred all of Forum's business and assets into MCEG's subsidiary, Virgin Vision Ltd. thus rendering Forum a dormant, non-operating entity and causing MCEG and Forum to breach their agreements with the plaintiff.
The plaintiff alleges that in 1989 CIC issued a "Directors and Officers Liability and Company Reimbursement Policy # DO-012679" to MCEG for the period from August 1, 1989, to January 31, 1989, which provided that CIC would pay for losses incurred by the directors and officers of MCEG in connection with claims made against them for specific wrongful acts that were first made during the policy period. The plaintiff claims that on or about July 6, 1990, within the policy period, he made a claim against the officers and directors in the United States District Court for the Southern District of New York. The plaintiff alleges that instead of settling his claims against the directors and officers of MCEG, CIC and CIGNA filed an adversary proceeding in bankruptcy court in California where MCEG had filed a bankruptcy action in order to enjoin him from pursuing his claims.
The plaintiff further alleges that in April 1992, CIC and CIGNA commenced an action in California Superior Court seeking a; judgment declaring that the policy was void from its inception, and that he was not provided with notice of this action until one year later. The plaintiff alleges that CIC, CIGNA, MCEG and the defendants have "intentionally, deliberately and maliciously CT Page 14423 conspired to rescind the Policy with the intent of preventing the plaintiff from ever recovering any of the proceeds of said Policy." (Amended Complaint, ¶ 22.)
The plaintiff further alleges that in August 1992, he commenced an action against CIGNA and CIC in Federal District Court for the District of Connecticut. The plaintiff alleges that at the court-ordered settlement conferences, the defendants, by counsel, continued to act in bad faith by making misrepresentations, as well as by having the plaintiff stalked by a former United States Secret Service agent employed by CIGNA and hired by the defendants. The plaintiff claims that since he commenced the federal action in Connecticut, he has not been allowed to propose a resolution at the annual stockholders meeting of CIGNA, even though he was a shareholder at the time and substantially complied with the requirements for introducing a resolution.
Finally, the plaintiff alleges that "[a]s a result of the complete domination and control of CIGNA and CIC by these defendants, CIGNA and CIC have no separate mind, will or existence of their own. Moreover, there is such a unity of interest between the defendants and CIGNA and CIC that it would defeat both equity and justice to recognize the fiction of separate identifies between the defendants and CIGNA and CIC. Accordingly, the corporate structure or `veil' of CIGNA and CIC should be disregarded and these defendants, who control the finances and business practices of CIGNA and CIC, should be held liable for all of the damages suffered by the plaintiff on account of the conduct of CIGNA and CIC alleged herein." (Amended complaint, ¶ 26(a).)
Based upon these allegations, the plaintiff has asserted claims for: violation of the Connecticut Unfair Insurance Practices Act (CUIPA); tortious breach of contract; violation of the Connecticut Unfair Trade Practices Act (CUTPA); civil conspiracy; common law bad faith; intentional infliction of emotional distress; negligent infliction of emotional distress; violation of the plaintiff's civil rights; and breach of fiduciary duty.
The defendants have filed a motion (#120) to strike the amended complaint on three grounds: the plaintiff has still failed to allege any facts sufficient to pierce the corporate veil; the plaintiff's claims are premised on an alleged duty of CIC as insurer to settle Mr. Weinberg's underlying claims against CIC's insureds, but there is no such duty, particularly in light of the dismissal of the plaintiff's underlying claim against CIC's CT Page 14424 insureds and consequently there is no duty owed by the parent company CIGNA; and each of the nine counts, standing alone, is, legally insufficient to state a claim.
On October 18, 1995, the defendants filed a supplemental memorandum apprising the court that the United States Court of Appeals for the Second Circuit had affirmed the prior dismissal of the plaintiff's claims against CIC and CIGNA.
"The purpose of a motion to strike is to `contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Novametrix Medical Systems, Inc. v.BOC Group, Inc., 224 Conn. 210, 214-15, 618 A.2d 25 (1992). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Id., 215. Where a "'pleading . . . on its face is legally insufficient, although facts may indeed exist which, if properly pleaded, would establish a cause of action upon which relief could be granted,' a motion to strike is required." Amore v. Frankel,228 Conn. 358, 372, 636 A.2d 786 (1994).
"To hold a corporate officer personally liable for wrongdoing, there must be a sufficient factual basis for a court to pierce the corporate veil." United Electrical Contractors, Inc. v. ProgressBuilders, Inc., 26 Conn. App. 749, 755, 603 A.2d 1190 (1992). In its decision on the previous complaint, this court, Karazin, J., found that "the plaintiff has failed to allege any independent facts demonstrating the requisite control necessary to pierce the corporate veils of CIC and CIGNA, under either the instrumentality rule or identity rules."
The defendants argue that in the amended complaint the plaintiff added a paragraph to the original complaint in an effort to establish the requisite domination and control, but succeeded only in alleging duties and responsibilities that officers and shareholders normally owe to a corporation. The defendants argue that the allegations fall far short of alleging complete domination and control. The plaintiff counters that the additional allegations are sufficient to demonstrate the requisite control.
"The doctrine of piercing the corporate veil . . . is a tool employed by judges to hold those in control of a corporate CT Page 14425 enterprise liable for the enterprise's obligations where the corporate machinery has broken down, or where corporate practice offends one's sense of justice, as when the enterprise is grossly undercapitalized for the risks encountered." S. Cross, Connecticut Corporation Law and Practice, § 3.9. In order to pierce the corporate veil under the instrumentality theory, the plaintiff must demonstrate the following: "(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest, or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." (Internal quotation marks omitted.) Campisano v. Nardi, 212 Conn. 282, 291-92, 562 A.2d 1
(1989).[1]
The plaintiff's additional allegations charge that the defendants had control over the following: financial statements and CIGNA's annual reports; accounting policies, controls and public reports; audits and auditors and auditing standards; legal and ethical standards for CIGNA and CIC; capital resources of CIGNA; 500, 167 shares of CIGNA stock; premiums and fees for products; amounts required to be kept in reserve by CIGNA and CIC to pay claims and for litigation and public disclosure about litigation. (Amended Complaint, ¶ 26(b)1-11.)
The plaintiff is alleging that CIGNA and CIC failed to settle his claims, that they have rescinded the policy to his detriment, and they have lied and misrepresented facts to him and the courts regarding these matters. As to the first prong of the instrumentality test, the plaintiff has alleged that the defendants exercise control over a number of matters. None of the matters over which the defendants allegedly exercise control relate to the transaction at issue, nor do the allegations suggest complete domination by the defendants over the corporation. The only allegations relevant to the suit are the allegations that the defendants set aside reserve amounts to pay claims and judgments and represent to the public their opinion as to whether any pending judgments will materially affect the value of the company. (Amended complaint, ¶ 26(b) 10-11. ) These allegations fall far short of alleging even knowledge, much less complete control over the CT Page 14426 transaction at issue.
The second prong requires allegations that the control alleged was used to perpetrate the wrongdoing. Since there is no control alleged in regard to the transaction at issue, there is no allegation of how the directors' and shareholders' duties and responsibilities contributed to the harm to the plaintiff. The last prong, causation, is likewise insufficient to meet this requirement. There must be a link between the control exercised by the defendants and the harm alleged.
The plaintiff has also attempted to name the defendants personally because of wrongful and tortious conduct. In this court's previous ruling, Judge Karazin held "[i]n the present case, the plaintiff's complaint contains allegations with regard to actions and conduct of CIGNA and CIC, and not the action or conduct of the individual defendants." The only action that the plaintiff attributes to the defendants directly in his amended complaint is the following: "on information and belief, these defendants are directly responsible for the hiring by CIGNA of individuals to follow and intimidate the plaintiff as herein alleged." (Amended Complaint, ¶ 26(b) 14.) The plaintiff alleges harassment in ¶ 24, claiming that CIGNA and CIC had the plaintiff stalked and followed' by car. The plaintiff subsequently incorporates this allegation into all the counts.
"[A]n officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby." Scribner v. O'Brien, Inc., 169 Conn. 389, 404,363 A.2d 160 (1975). While the acts in regard to the underlying transaction as alleged by the plaintiff were actions taken by the corporation, the hiring of these individuals was attributed directly to the defendants, and are incorporated into tort allegations. Therefore, each count of the complaint must be examined.
The first count alleges a violation of General statutes § 38a-816, the Connecticut Unfair Insurance Practices Act (CUIPA), for failure to settle in good faith. In the third count, the plaintiff alleges a violation of General statutes § 42-110, the Connecticut Unfair Trade Practices Act (CUTPA). In the plaintiff's previous suit filed against CIGNA and CIC, the U.S. District Court for the District of Connecticut dismissed the plaintiff's CUIPA and CUTPA CT Page 14427 claims. The court held "[a]lthough failure to attempt in good faith to settle a claim can constitute an unfair settlement practice, the liability for the claim which forms the basis of the CUTPA/CUIPA violations must have become reasonably clear. . . . the insurer must fail to act in good faith with such frequency as to indicate a general business practice. . . . [and] the insurer owes the duty to act in good faith to the insured and not to a third party." (Internal citations omitted.) Weinberg v. Cigna, U.S. District Court, D. Conn., Docket No. 5:92CV494 (March 3, 1995). The court held that the plaintiff is not named in the CIC policy, insuring the officers and directors of MCEG and Forum for their' actions in relation to MCEG and forum, therefore the insurers do not owe a duty to him and he has no cause of action. Id. Further, the plaintiff does not allege any acts of misconduct by CIGNA or, CIC other than in connection to his underlying action and therefore there is no allegation of a general business practice. Lastly, the district court in New York dismissed the plaintiff's claims against the MCEG directors based on the same actions, therefore the liability of the insured in the underlying action is not reasonably clear. Id.; Weinberg v. Management Company Entertainment Group,
U.S. District Court, S.D.N.Y., Docket No. 90 CIVIL 4494 (January 31, 1995). The plaintiff does not have a cause of action against the parent company CIGNA or MCEG, he certainly does not have a cause of action against CIC or CIGNA's directors and officers. The alleged harassment does not change this because the defendants simply do not owe a duty to the plaintiff.
Mr. Weinberg's second and fifth counts allege tortious breach of contract and violation of a common law duty of good faith. In, his complaint, the plaintiff claims that he is a third party beneficiary of the policy and there is an implied covenant of good faith and fair dealing running to him. He alleges that the contract was breached and the defendants have not dealt with him in good faith. The defendants argue that the insurer' s duty is to the insured, not the insured's adversary and that Connecticut courts have repeatedly held that a third-party claimant is not entitled to sue an insurer for alleged refusal to settle the third party' s claim.
"A claimant has no direct cause of action against an insurance company of the tortfeasor. The insurance company has the obligations to defend its insureds and to pay damages which the insured owes to the plaintiff when there is a judgment against the defendant. The cause of action claimed by the plaintiff would interfere with the insurance company's right and duty to defend its CT Page 14428 insured. The plaintiff should not be allowed to short circuit this process by claiming that the insurer unfairly failed to settle an unliquidated claim (as opposed to an existing judgment) against the insured." Richards v. Deaton, Superior Court, judicial district of Danbury, Docket No. 309417 (March 11, 1993, Fuller, J.,8 CSCR 362). The plaintiff cannot assert a cause of action against the defendant in tortious breach of contract.
"In every insurance contract there is an implied covenant of good faith and fair dealing." L.F. Pace and Sons Inc. v.Traveler's Indemnity Co., 9 Conn. App. 30, 46, 514 A.2d 693 (1988). However, "[n]o Connecticut court has extended the implied covenant of fair dealing and good faith to parties who have not entered into a contractual relationship." Decormier v. Orange Mutual CasualtyCo., Superior Court, judicial district of New London, Docket No. 525835 (October 18, 1993, Hurley, J.) (action against insurance company of tortfeasor). "The plaintiff does not allege he is an insured or a party to the contract of insurance." Jose deVillegasv. Quality Roofing, Inc., Superior Court, judicial district of Bridgeport, Docket No. 029419 (December 1, 1993, Freedman, J.) (granting motion to strike bad faith claim for refusal of employer's insurance company to honor claim for lost overtime pay). Accordingly, the plaintiff, because he is not the insured nor a party to the contract, cannot state a claim for tortious breach of contract and implied covenant of good faith and fair dealing.
The plaintiff's fourth count alleges civil conspiracy by the defendants to prevent the plaintiff from obtaining any proceeds of the Policy to which he is lawfully entitled." (Complaint, ¶ 42). A cause of action for conspiracy to commit a tort exists in Connecticut. See Talit v. Peterson, 15 Conn. L. Rptr. 166
(September 27, 1995, Blue, J.) (discussing the viability of a cause of action for civil conspiracy). The elements of that tort are: "(1) a combination between two or more persons[;] (2) to do a criminal or unlawful act or a lawful act by criminal or unlawful means[;] (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object[;] (4) which act results in damages to the plaintiff." Williams v.Maislen, 116 Conn. 433, 437, 165 A. 455 (1933). To be legally sufficient the plaintiff must allege that the underlying acts are wrongful. The plaintiff has no rights under the insurance contract because he is not a party to the contract and therefore cannot enforce it. On the facts alleged, as discussed above, there were no CUIPA or CUTPA violations. Furthermore, the facts alleged do not support a civil rights violation. See infra. The alleged CT Page 14429 misrepresentation to the District Court in Connecticut regarding settlement offers has nothing to do with the alleged aim of the conspiracy: preventing the plaintiff from obtaining proceeds from the policy.
Counts six and seven allege intentional and negligent infliction of emotional distress in that the defendants put the plaintiff and his family in fear of their safety and deprived the plaintiff of the proceeds from the policy. For intentional infliction of emotional distress the defendant must allege that "1. the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of his or her conduct; 2. the conduct was extreme and outrageous; 3. the defendant's conduct caused the plaintiff's distress; 4. the emotional distress sustained by the plaintiff was severe." Petyanv. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress or even that his conduct has been characterized, by `malice'. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."Tartaglia v. Marino, Superior Court, judicial district of Danbury Docket No. 313696 (April 25, 1994, Moraghan, J.) (granting motion to stroke emotional distress claim arising from alleged telephone calls and deliveries). As has previously been discussed, since neither CIGNA nor CIC owe the plaintiff any duty, and he has no rights under the contract, these certainly cannot be termed outrageous. The only consideration would be whether the defendants' actions in hiring the security guards alleges sufficient facts to support outrageous behavior. Without any further allegations of threatening behavior or harm, the alleged behavior does not state a claim. See Regulbuto v. General HealthMgmt, Inc., 3 Conn. L. Rptr. 686 (January 29, 1991, Clark, J.) (granting motion to strike claim for intentional infliction of emotional distress arising out of alleged intentional breach of severance agreement with the plaintiff).
To state a claim of negligent infliction of emotional distress, the plaintiff must allege that "a defendant should have realized that its conduct involved an unreasonable risk of causing the distress, and from the facts known to it, should have realized that the distress, if it were caused might result in illness or bodily harm." Montinieri v. Southern New England Telephone Co.,
CT Page 14430175 Conn. 337, 341, 398 A.2d 1180 (1978). The plaintiff has not alleged illness or bodily harm; he has alleged mental distress. Therefore, the plaintiff has not stated a claim for negligent infliction of emotional distress.
The plaintiff's eighth count, civil rights violation, rests on the alleged pursuit of him and his family by the guards. "To establish a claim under [42 U.S.C.] § 1983, the two essential elements which the plaintiff must allege are' (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States'" Parrat v. Taylor, 451 U.S. 527, 535,101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); Tucker v. NeighborhoodLegal Serv., Inc., 4 Conn. App. 209, 212, 493 A.2d 278, 280 (1985). The plaintiff has not alleged a state action as required by § 1983 and therefore, his civil rights claim must fail.
In the ninth count, the plaintiff alleges breach of the fiduciary duty owed to minority shareholders by directors, officers and majority shareholders. "If the controlling majority, stockholder seeks to injure the minority stockholder though the means of looting the corporation or so wrecking it that the minority stockholder would get nothing out of his assets, the claim resulting therefrom is sufficient to constitute an individual action." Davis v. Vito, 19 Conn. App. 256, 262, 562 A.2d 71
(1989). The plaintiff has alleged a breach of duty to him in his capacity as a person doing business with MCEG and with CIGNA and CIC, not in his capacity as a shareholder. He has not alleged any damage to his interests in his stock. Accordingly, the plaintiff does not state a cause of action in breach of fiduciary duty and the complaint should be struck.
In conclusion, the motion to strike the amended complaint in its entirety is granted.
So Ordered.
Dated at Stamford, Connecticut, this 26th day of December, 1995.
William B. Lewis, Judge