[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Mary Ann Howell and the now defunct Mary Ann Howell Interiors, Inc. (Interiors) entered into an agreement in 1993 for the remodeling and decoration of certain healthcare facilities eventually owned by the plaintiff, Litchfield Asset Management Corporation (Litchfield). Litchfield commenced an action against Mary Ann Howell and Interiors in the district court of Hale County, Texas in 1995, based on services provided under the agreement. Mary Ann Howell and Interiors subsequently objected to the jurisdiction of the Texas court, but the objection was overruled and the action remained on the court's docket. In July of 1996, Litchfield filed a motion for default judgment against Howell and Interiors that was granted and, accordingly, a judgment against Howell and Interiors was entered in the amount of $657,207.38, plus interest.
Litchfield commenced an action against Mary Ann Howell and Interiors in the Superior Court for the Judicial District of Fairfield at Bridgeport, Docket No. 336936, in December of 1996 predicated on the judgment obtained in the Texas court that had not yet been satisfied. In February of 1997, a judgment in the amount of $657,207.38, plus accrued interest, entered in favor of Litchfield and was affirmed on appeal on December 2, 1997. See Litchfield Asset Management Corp. v. Howell, 47 Conn. App. 920
(1997).
Meanwhile, a new company, Mary Ann Howell Interiors Architectural Design, L.L.C. (Design) was formed in May of 1996. Mary Ann Howell contributed $144,679.00 in return for a ninety-seven per cent ownership interest in Design. Then, in November of 1997, another company, Antiquities Associates, L.L.C. (Antiquities), was formed. This time, Design contributed $100,000 for a ninety-nine per cent ownership interest and Mary Ann Howell contributed $10 for a one per cent ownership interest.
The present three-count action was commenced on May 11, 1998, by service of process upon defendants Mary Ann Howell, her husband Jon Howell, Design, and Antiquities. In the first and second counts of the CT Page 13764 complaint, the plaintiff alleges that the limited liability companies should be disregarded and asks the court to declare that Design and Antiquities are alter egos of the Mary Ann Howell, "established and operated so as to avoid the just debt owed the plaintiff. . . ." (Complaint at 5.) In the third count of the complaint, the plaintiff alleges that Mary Ann and Jon Howell, are guilty of civil conspiracy and asks the court to enjoin them from transferring or encumbering any assets of; or income or profits derived from Design and Antiquities until the plaintiff's judgment has been satisfied. Additionally, on all counts of the complaint, the plaintiff seeks monetary damages, punitive damages, attorney's fees, interest, costs of suit, and such other and further relief in equity as the court deems appropriate.
General Statutes § 34-133 provides, with certain exceptions, that: "a person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager, under a judgment, decree or order of a court, in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise or for the acts or omissions of any other member, manager, agent or employee of the limited liability company." Thus, "[o]ne of the principal reasons to use an LLC is that the owners and managers, if the owners so elect, have limited liability from contract and tort claims of third parties." M. Pruner, A Guide to Connecticut Limited Liability Companies, § 3.1.1, p. 9 (1995). This is not unlike the protection from liability afforded by incorporation. See General Statutes § 33-673.
The limitation on liability provided by incorporation or the formation of an L.L.C. is not, however, without boundaries. "When [a] corporation is the mere alter ego, or business conduit of a person, it may be disregarded." De Leonardis v. Subway Sandwich Shops, Inc.,35 Conn. App. 353, 358, 646 A.2d 230, cert. denied, 231 Conn. 925,648 A.2d 162 (1994); see also Zahra Spiritual Trust v. United States,910 F.2d 240, 245 (5th Cir. 1990) ("the alter ego theory provides a basis for disregarding corporate form"). "Courts will . . . disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity, has been so controlled and dominated that justice requires liability to be imposed on the real actor." Angelo Tomasso, Inc. v. ArmorConstruction Paving, Inc., 187 Conn. 544, 552, 447 A.2d 406 (1982). "The rationale behind the alter ego theory is that if the shareholders themselves, or the corporations themselves, disregard the legal separation, distinct properties, or proper formalities of the different corporate enterprises, then the law will likewise disregard them so far as is necessary to protect individual and corporate creditors." 1 W. Fletcher, Cyclopedia of the Law of Private Corporations (1990) § CT Page 13765 41.10, p. 614. The same theory applies in the case of a limited liability company. See, e.g., New England National, LLC v. Kabro, Superior Court, judicial district of New London. Docket No. 550014 (Feb. 16, 2000,Martin, J.); see also M. Pruner, supra, §§ 3.1.1.4, 7.14, pp. 10, 106-07.
Disregard of a corporate entity or L.L.C. for the purpose of imposing liability upon individual shareholders or members for acts of the corporation or company is commonly referred to as "piercing the corporate veil." Ordinarily, "a corporate veil is pierced by a creditor suing an individual who has used a corporation as an instrument of fraud." AngeloTomasso, Inc. v. Armor Construction Paving, Inc., supra, 187 Conn. 555. The veil should, however, only be pierced under extraordinary circumstances. Id., 557.
The situation in the present case differs from the usual corporate veil piercing fact pattern in that the plaintiff is asking the court to disregard the existence of the L.L.C.s so that it may attach company assets as if they were assets of the individual. See Estudios, Proyectose Inversiones de Centro America v. Swiss Bank Corp., 507 So.2d 1119, 1120
(Fla.App. 3 Dist. 1987) ("[t]he usual result of piercing the corporate veil is that the controlling shareholder or shareholders become liable for the corporate liabilities"). Accordingly, the assets held by the L.L.C.s would not, in effect, be treated as company assets but instead as assets of Mary Ann Howell individually and thus subject to the plaintiff's judgment against her. Such a situation is sometimes referred to in case law as a reverse pierce of the corporate veil. See Estate ofStotz v. Everson, Superior Court, judicial district of Stamford/Norwalk, Housing Session at Norwalk, Docket No. 062906 (Nov. 8, 1994, Tierney,J.). This remedy is available "to hold the corporation liable for the debts of controlling shareholders where the shareholders have formed or used the corporation to secrete assets and thereby avoid preexisting personal liability." Estudios, Proyectos e Inversiones de Centro Americav. Swiss Bank Corp., supra, 507 So.2d 1120.[1]
In Estate of Stotz, the plaintiff sought to hold a corporation liable for the individual defendant's failure to pay rent. While the court expressly refused to decide whether Connecticut recognized a reverse pierce action, the court determined that the standards applied in other corporate veil piercing cases in Connecticut also applied in such cases.Estate of Stolz, supra, Docket No. 062906. In Estudios, the defendant attached assets owned by a corporation after the corporation defaulted on notes it issued in favor of the defendant's predecessor in interest. Granados, an individual, and others guaranteed payment of the notes, making them debtors. The corporation later moved to have the writ of attachment dissolved. The court found that the trial court had evidence CT Page 13766 showing that Granados created and controlled the corporation and used it to secrete his personal assets and defraud his creditors. Because the corporation was Granados' alter ego, the court found that the corporation was "in essence" the debtor and that the trial court correctly denied the motion to dissolve the writ of attachment on property owned by the corporation. Estudios, Proyectos e Inversiones de Centro America v. SwissBank Corp., supra, 507 So.2d 1120.
There are two tests used in determining whether the limited liability veil should be pierced under the alter ego theory, the instrumentality rule and the identity rule. See Angelo Tomasso, Inc. v. ArmorConstruction Paving, Inc., supra, 187 Conn. 544; Saphir v. Neustadt,177 Conn. 191, 209-10, 413 A.2d 843 (1979). "The concept of piercing the corporate veil is equitable in nature. . . . No hard and fast rule, however, as to the conditions under which the entity may be disregarded can be stated as they vary according to the circumstances of each case."Angelo Tomasso, Inc. v. Armor Construction Paving, Inc., supra, 555-56.
The Connecticut Supreme Court has consistently held that the instrumentality rule requires proof of three elements: "(1) [c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." Campisano v.Nardi, 212 Conn. 282, 291-292, 562 A.2d 1 (1989), citing Angelo Tomasso,Inc. v. Armor Construction Paving, Inc., supra, 553.
The applicability of the instrumentality rule in this case is arguable. Clearly, the instrumentality rule may be applied when a party seeks to disregard the existence of the corporate entity and recover from an individual on a particular unjust transaction entered into by a corporation while the corporation was under the individual's control or domination. Here, the L.L.C.s were not created until after the transaction giving rise to the plaintiff's judgment against Mary Ann Howell had already taken place. Furthermore, the L.L.C.'s were created nearly one year after judgment entered in favor of the plaintiff. Nevertheless, the Supreme Court suggests that courts should exercise some flexibility in applying the rules to account for the different circumstances under which such claims arise. See Angelo Tomasso, Inc. v.Armor Construction Paving, Inc., supra, 555-56. CT Page 13767
The first element of the instrumentality rule to examine is control. Mary Ann Howell has a ninety-seven per cent ownership interest in Design that, in turn, has a ninety-nine per cent ownership interest in Antiquities.[2] Mary Ann Howell is also the general manager of both companies. The court is satisfied, from the evidence presented, that Mary Ann Howell exercised near complete control in both the formation of the companies, making sure that no one, not even close family members, have a significant ownership interest in the companies. The evidence also shows that Mary Ann Howell exercised complete control over the finances, policy, and business practices of the companies, far exceeding the authority allowed to her in the company operating agreements. Her husband testified that he was merely an accommodation member and that he had no knowledge of the affairs of the companies. Mary Ann Howell regularly misused company funds on personal items, lent significant sums of money to family members, and paid off the loan on an automobile titled to her husband without interference from the other members.
The court further finds that Mary Ann Howell's act in forming the companies with knowledge of the plaintiff's claim against her was dishonest and unjust in that it aided her in avoiding her debt to the plaintiff. Mary Ann Howell's operation of the companies, using company funds to pay for personal expenses rather than drawing a substantial salary or making any kind of regular distributions likewise prevented the plaintiff from any reasonable means in which to collect its judgment in contravention of its legal rights, These acts on the part of Mary Ann Howell proximately caused the plaintiff's injury in not being able to collect upon its judgment. Thus, the elements of the instrumentality rule are satisfied.
"The identity rule has been stated as follows: [i]f plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." Angelo Tomasso, Inc. v. ArmorConstruction Paving, Inc., supra, 187 Conn. 554. The Connecticut Supreme Court cautions, however: "that stock ownership, while important, is not a prerequisite to piercing the corporate veil but is merely one factor to be considered in evaluating the entire situation. . . . It is clear that the key factor in any decision to disregard the separate corporate entity is the element of control or influence exercised by the individual sought to be held liable over corporate affairs." Id., 556-57. CT Page 13768
In applying the identity rule, the plaintiff must first show unity of interest and ownership between Mary Ann Howell and the L.L.C.s. As to the first count of the complaint, Mary Ann Howell had a ninety-seven per cent interest in Design. The remaining three per cent was divided evenly between Marla Howell, Wendi Howell, and Jon Howell. (Defendant's Exh. 5.) Mary Ann Howell's initial capital contribution to the company was in the amount of $144,679. (Defs.' Exh. 4.) The remaining members each contributed $10. Id. Mary Ann Howell is the general manager of the company and the statutory agent. As for Antiquities, Design has a ninety-nine per cent interest and contributed $100,000, Mary Ann Howell has a one per cent interest and contributed $10. Mary Ann Howell is also the general manager of this company. (Defs.' Exh, 26.) Each of the members of Design ratified the decision of Mary Ann Howell, acting as general manager of Design, to purchase a ninety-nine per cent interest in Antiquities in exchange for $100,000. (Defs.' Exh. D 6.)
The near total ownership interest of Mary Ann Howell in Design and that company's near total ownership interest in Antiquities is a significant factor in determining whether there is unity of ownership and interest. The interests owned by parties other than Mary Ann Howell and the contributions of those parties are negligible.
The most important factor, however, as set forth by the Supreme Court is control. Mary Ann Howell is the general manager of both companies. The operating agreement of Design gives Mary Ann Howell, as general manager, considerable authority. (Pl.'s Exh. B at 12-13.) The operating agreement also provides that a manager "may, but need not, be a Member." (Pl.'s Exh. B at 14.) Thus, there is some difficulty in determining how much control on the part of Mary Ann Howell is too much. As a general manager, Mary Ann Howell is permitted and would be expected to exercise a great deal of control over the companies. The line is crossed, however, when a manager exercises total and complete control over a company and the level of control exercised by that manager indistinguishable from that which would be exercised over his or her personal affairs.
Mary Ann Howell, in conducting the affairs of the companies treated company funds as if they were her own. The plaintiffs present evidence showing that she made numerous personal expenditures using company funds. The parties stipulated to a number of such expenditures ranging from the payment of medical expenses to loans to various family members. While the operating agreement authorizes expenditures of the capital, assets, and income of the companies in furtherance of company business, the operating agreement does not authorize the commingling of funds nor does it permit loans to be made to family members on terms unlike those in an arms length transaction. No evidence was presented that any of the other members made any attempt to challenge the actions of Mary Ann CT Page 13769 Howell or that they could. Furthermore, with the exception of keeping certain records and filing corporate tax returns, that the companies were operated in any way different than Mary Ann Howell conducted her own personal affairs.
Design was owned almost entirely by Mary Ann Howell and Antiquities was owned almost entirely by Design. Thus, there is no appreciable difference between Mary Ann Howell as an individual and the companies with regard to ownership. Coupling this with the substantial evidence advanced at trial showing that Mary Ann Howell exerted complete control over the companies, both in decision-making and in operations, treating company funds as personal funds, and that the proceeds of sales by Antiquities were deposited into the Design account, the court finds that the requirements of the identity rule as set forth by the Connecticut Supreme Court are satisfied.
The third count of the complaint alleges civil conspiracy. "The contours of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." Marshak v. Marshak,226 Conn. 652, 665, 628 A.2d 964 (1993), overruled on other grounds,State v. Vakilzaden, 251 Conn. 656, 742 A.2d 767 (1999), citing Williamsv. Maislen, 116 Conn. 433, 437, 165 A. 455 (1933).
In the present case, the plaintiff alleges that Mary Ann and her husband, Jon Howell, conspired to shield Mary Ann Howell's assets from their judgment. The court finds the evidence provided by the plaintiffs credible with regard to their civil conspiracy claim. They proved that Mary Ann and Jon Howell conspired to shield their assets from the plaintiffs and did so by transferring assets to Design and Antiquities and that the plaintiff was damaged because it was unable to collect upon its judgment.
The court declares that defendants Mary Ann Howell Interiors 
Architectural Design, L.L.C. and Antiquities Associates, L.L.C. are alter egos of Mary Ann Howell, established and operated so as to avoid the just debt owed the plaintiff by the defendant, Mary Ann Howell.
The court orders that: (1) defendants Mary Ann Howell Interiors 
Architectural Design, L.L.C. and Antiquities Associates, L.L.C. are hereby enjoined from transferring or otherwise encumbering their assets until the plaintiff's judgment has been satisfied; and (2) defendants Mary Ann Howell and Jon Howell are hereby enjoined from transferring or otherwise encumbering any assets of, or income or profits derived from, CT Page 13770 Mary Ann Howell Interiors Architectural Design, L.L.C. and Antiquities Associates, L.L.C. until the plaintiff's judgment has been satisfied.
The court awards to the plaintiff monetary damages in the amount of $163,260.60, representing the amount invested by Mary Ann Howell in Mary Ann Howell Interiors Architectural Design, L.L.C. and the amount paid for the van titled to Jon Howell. This amount, when paid, shall be in partial satisfaction of the debt owed to the plaintiff in the amount of $657,207.38. The court also awards punitive damages on the third count in the amount of $21,682.50, the amount of the plaintiff's attorney's fees.Berry v. Loiseau, 223 Conn. 786, 827, 614 A.2d 414 (1992) ("common law punitive damages serve primarily to compensate the plaintiff for his injuries and, thus, are properly limited to the plaintiff's litigation expenses less taxable costs").
BY THE COURT
Charles D. Gill, J.