******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM C. STYSLINGER III *v.* BREWSTER
PARK, LLC, ET AL.
(SC 19489)

Rogers, C. J., and Palmer, Zarella, McDonald, Espinosa, Robinson and
Vertefeuille, Js.

*Argued December 15, 2015—officially released May 17, 2016*

*Joel Z. Green*, with whom, on the brief, was *Linda*

*Pesce Laske*, for the appellant (plaintiff).

*Andrew M. McPherson*, with whom, on the brief, was *William J. Kupinse, Jr.*, for the appellees (defendants).

*Opinion*

VERTEFEUILLE, J. In this appeal, we must determine whether the assignee of a membership interest in a Connecticut limited liability company (LLC) has standing to seek a court order forcing the winding up of the affairs of an LLC in the absence of the LLC's dissolution. We conclude that the assignee does not have standing to do so.

The named defendant, Brewster Park, LLC (Brewster Park), is an LLC with a business address in Fairfield that owns, maintains, and leases residential housing units in Bridgeport and Trumbull. It has two members: the defendant Michael Weinshel[1] and Joyce Styslinger, a nonparty to this action who is the former spouse of the plaintiff, William C. Styslinger III. As part of a marriage dissolution settlement agreement, Joyce Styslinger assigned her membership interest in Brewster Park to the plaintiff. The parties agree that, under General Statutes §§ 34-170 and 34-172, the plaintiff, as assignee, has the right to receive distributions resulting from Joyce Styslinger's membership interest in Brewster Park, while Joyce Styslinger remains a member of Brewster Park unless and until the plaintiff is admitted to membership by Weinshel, the other member of Brewster Park. See General Statutes §§ 34-172 and 34-179. The plaintiff has requested membership status, but has not been granted it by Weinshel. Brewster Park also has not made any distributions to the plaintiff, despite the plaintiff's demand.

The plaintiff filed the present action against Brewster Park and Weinshel claiming, among other things, that Weinshel has breached his fiduciary duties to Brewster Park and the plaintiff by refusing to make distributions to the plaintiff while taking distributions for himself, and by refusing to allow the plaintiff to inspect Brewster Park's books and records. In his complaint, the plaintiff sought the following forms of relief: (1) an order dissolving Brewster Park; (2) the appointment of a receiver to wind up its affairs and distribute its assets; and (3) "[s]uch other and further relief as in law or equity may appertain."

The defendants moved to dismiss the complaint on the ground that the plaintiff, as an assignee, lacked standing to seek orders to dissolve and wind up the affairs of Brewster Park because only members could seek this relief under the Connecticut Limited Liability Company Act (act), General Statutes § 34-100 et seq. The plaintiff responded that both the act and principles of equity gave him standing to pursue the dissolution and the winding up of affairs, even as an assignee, as a remedy for Weinshel's wrongful conduct.

The trial court agreed with the defendants that the plaintiff did not have standing to seek a dissolution or a winding up of Brewster Park's affairs. Because the

plaintiff did not request with specificity any other form of relief besides a dissolution and a winding up of the affairs, the court rendered judgment dismissing the complaint.[2] The trial court also denied a motion by the plaintiff to reconsider its ruling. The plaintiff appealed from the judgment of dismissal to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiff no longer argues that he has standing to seek the dissolution of Brewster Park. Instead, he claims that the act grants him standing to seek a winding up of Brewster Park's affairs and distribution of its assets even in the absence of a dissolution. We disagree, and affirm the trial court's judgment.

"As a preliminary matter, we set forth the standard of review. A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss will be de novo. . . .

"The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . .

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Citations omitted; internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 213–14, 982 A.2d 1053 (2009).

The question of whether the plaintiff, as assignee of a membership interest in an LLC, has standing to bring his claims under the act, presents an issue of statutory construction, also a question of law over which our review is plenary. Well established principles guide our interpretation. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous

and does not yield absurd or unworkable results, extra-textual evidence of the meaning of the statute shall not be considered. . . . [W]e are [also] guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197–98, 3 A.3d 56 (2010).

We begin our analysis with the nature of LLCs and the law that governs them. Our common law does not recognize LLCs, which were first created by statute in in Connecticut in 1993. Public Acts 1993, No. 93-267. An LLC is a distinct type of business entity that allows its owners to take advantage of the pass-through tax treatment afforded to partnerships while also providing them with limited liability protections common to corporations. See, e.g., 51 Am. Jur. 2d 818, Limited Liability Companies § 1 (2011); see also General Statutes § 34-133 (setting forth members' limited liability protections). The act establishes the right to form an LLC and all of the rights and duties of the LLC, as well as all of the rights and duties of members and assignees. It permits the members to supplement these statutory provisions by adopting an operating agreement to govern the LLC's affairs. See, e.g., General Statutes § 34-140 (c) (permitting members to adopt operating agreement governing LLC's affairs, provided agreement is consistent with act). It is undisputed in the present case, however, that Brewster Park does not have an operating agreement to supplement the rights and duties established in the act.

The provisions of the act relating to winding up an LLC's affairs inextricably link the winding up process to a dissolution, and therefore must be read together with the statutes governing the dissolution of an LLC. See, e.g., General Statutes §§ 34-206 through 34-209. Tellingly, the provisions governing a winding up of the affairs of an LLC are found within the provisions governing the dissolution process. The statutory provisions with regard to both dissolution and winding up of affairs are found within the portion of the act entitled "DISSOLUTION." General Statutes §§ 34-206 through 34-216. Reading the winding up and dissolution statutes together, the act creates a clear progression from dissolution to winding up the affairs, demonstrating that a winding up is not an independent event, but is an integral part of the dissolution process. Once an event of dissolution occurs, the LLC winds up its affairs, distributes its assets, and then terminates its business operations. See, e.g., *Mukon* v. *Gollnick*, 151 Conn. App. 126,

131–32, 92 A.3d 1052 (2014).

The act provides only a single mechanism for triggering a winding up of an LLC's affairs: an event of dissolution. Section 34-206 provides in relevant part that "[a] limited liability *company is dissolved and its affairs shall be wound up* upon the happening" of one of three events: (1) any event of dissolution specified in the LLC's articles of organization or operating agreement; (2) a vote to dissolve by the majority of the LLC's members; or (3) the entry of a decree of judicial dissolution under General Statutes § 34-207. (Emphasis added.) Under § 34-207, only a member or someone on the member's behalf may apply for a decree of dissolution, and a decree may enter only if the court determines that "it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement."[3] General Statutes § 34-207. There are no other mechanisms in the act for triggering a winding up of the affairs.

Moreover, the provisions of the act governing the winding up process presuppose that the LLC has already dissolved prior to winding up its affairs. For instance, General Statutes § 34-208 (a) (1) explains who may carry out the winding up process and vests this power in "the *members* or mangers who have authority . . . to manage the limited liability company *prior to dissolution* . . . ." (Emphasis added.) General Statutes § 34-209 (a) sets out the powers of members and managers to bind the LLC after dissolution, providing in relevant part that, "*after dissolution* of the limited liability company, each of the *members having authority to wind up the limited liability company's business and affairs* can bind the limited liability company . . . (1) [*b*]*y any act appropriate for winding up* the limited liability company's business and affairs or completing transactions *unfinished at dissolution* . . . ." (Emphasis added.) In addition, General Statutes § 34-210, the sole provision among the dissolution sections of the act that governs the final distribution of the LLC's assets, provides in relevant part that, "[u]pon the *winding up* of a limited liability company, the assets shall be distributed as follows . . . ." (Emphasis added.)

In the present case, none of the events of dissolution specified in § 34-206 has occurred and the plaintiff therefore cannot trigger a winding up of Brewster Park's affairs. First, the plaintiff has not alleged that Brewster Park's articles of organization have triggered a dissolution and it has no operating agreement. Second, the plaintiff has not alleged that its members voted to dissolve. Third, because the plaintiff is not a member of Brewster Park, he cannot pursue a judicial dissolution under § 34-207. Unless and until the plaintiff is admitted to membership, Joyce Styslinger continues to hold the sole power to exercise the rights accompanying her

membership interest; see General Statutes §§ 34-170 (a) (4) and 34-172 (d); and she has not sought a judicial dissolution of Brewster Park in this action. Because no event of dissolution has occurred, and the plaintiff cannot force a judicial dissolution under § 34-207 as an assignee, we conclude that the act does not grant the plaintiff standing to seek a winding up of Brewster Park's affairs.

The plaintiff argues that his right to force a winding up of Brewster Park's affairs is found in § 34-208 (a). We disagree. That subsection pertains only to who may carry out the winding up process once it has been triggered by dissolution; it does not provide authority for an assignee to trigger a winding up in the first place. Section 34-208 (a) (1) provides in relevant part that, by default, the winding up may be carried out "by the members or managers who have authority . . . to manage the limited liability company prior to dissolution . . . ." Alternatively, "if one or more of the members or managers of the limited liability company have engaged in wrongful conduct, or upon other cause shown," the statute permits any member or an assignee to apply to the Superior Court to ask the court to carry out the winding up process in place of the members and managers. General Statutes § 34-208 (a) (2). Thus, under § 34-208 (a), if an LLC has dissolved, but the members or managers had engaged in wrongful conduct or for other cause shown, an assignee can apply to the Superior Court to have the court perform the winding up process instead of the members or managers. Nothing in § 34-208, however, permits an assignee to apply to the Superior Court to force the commencement of a winding up process absent a dissolution under § 34-206.

Apart from having no support from the text of the act, the plaintiff's interpretation of § 34-208 allowing an assignee to force a winding up of affairs without a dissolution of the LLC would undermine the statutory scheme for LLCs, thus leading to absurd results. Under the act, an assignee is a passive recipient of the economic benefit of a membership interest and is barred by the act from participating in the management of the LLC's business or exercising any right of membership unless and until the assignee is admitted as a member. General Statutes § 34-170 (a) (2) through (4). The act expressly provides that "an assignment of a limited liability company membership interest does not dissolve the limited liability company or entitle the assignee to participate in the management and affairs of the limited liability company or to become or exercise any rights of a member . . . ." General Statutes § 34-170 (a) (3). Instead, the rights and duties of membership remain vested in the assignor until the assignee is admitted to membership. General Statutes §§ 34-170 (a) (4) and 34-172 (d). Recognizing that assignees have no role to play in managing the LLC's affairs, the act shields them from any liabilities that a member might have;

General Statutes § 34-170 (a) (5); including, for example, for capital contributions. See General Statutes § 34-151 (describing member liability for capital contributions to LLC). Instead, the assignor member continues to hold the obligations of membership, including for capital contributions, and continues to owe a duty of good faith to the LLC. See, e.g., General Statutes §§ 34-140, 34-141 and 34-151.

The plaintiff's interpretation of the act is directly contrary to these limitations on the rights of an assignee, and would exalt rights of assignees to a level on par with those of members in the face of the act's clear intention to the contrary. Only members may vote to dissolve an LLC and wind up its affairs. General Statutes § 34-206 (2). Only a member or someone on his behalf may apply to a court for a judicial dissolution forcing a winding up of an LLC. General Statutes § 34-207. If an assignee could obtain a judgment effecting a winding up of the LLC's affairs without a dissolution, the assignee would hold the power to force a termination of the LLC's business operations, giving the assignee undue leverage over the members. In the present case, Joyce Styslinger, rather than the plaintiff, retains the sole right under the act to exercise her membership rights and to protect her membership interests.

There is only one provision of the act that places the rights of assignees on par with the members, and the power to exercise this right is available to assignees only *after* the LLC has dissolved. As we have previously explained, § 34-208 permits assignees, after a dissolution, to ask the Superior Court to conduct the winding up process in the stead of its members and managers, "if one or more of the members or managers of the limited liability company have engaged in wrongful conduct, or upon other cause shown." General Statutes § 34-208 (a) (2). Providing assignees this power after a dissolution and during a winding up process is wholly consistent with the limited role that the act grants to assignees. The assignee's interest in receiving distributions from the LLC becomes primary after an LLC dissolves. After dissolution, the purpose of the LLC is no longer to maintain its business operations, but to wind up its affairs so that the LLC's assets may be liquidated and distributed to its members or their assignees. General Statutes §§ 34-206 through 34-211. Thus, only after a dissolution does the act permit an assignee to petition the court to protect his or her then primary interest in receiving a share of the LLC's assets. General Statutes § 34-208 (a) (b) (5).

We therefore conclude that the act does not provide an assignee such as the plaintiff with standing to seek the winding up of the affairs of an LLC in the absence of a dissolution of that LLC.[4] Accordingly, the trial court properly dismissed the plaintiff's complaint.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] References to Brewster Park and Weinshel jointly are to the defendants; individual references are by name.

[2] The plaintiff claims on appeal that he is also entitled to pursue other forms of relief besides a winding up of Brewster Park's affairs, including money damages for Weinshel's wrongful conduct. In dismissing the complaint, however, the trial court noted that the plaintiff had failed to specifically request money damages and thus could not sustain such a claim. We agree with the trial court.

Assuming for the sake of argument that an assignee is entitled to seek some other relief, including money damages, for wrongful conduct on the part of the members or managers of an LLC, the plaintiff did not explicitly ask for any other relief besides a court-ordered dissolution and winding up of Brewster Park's affairs in his complaint. Although the plaintiff requested "[s]uch other and further relief as in law or equity may appertain," the trial court properly concluded that a more specific request was necessary to put the defendants on notice that the plaintiff was seeking some other form of relief besides dissolution and winding up. As the Appellate Court has explained, a catchall prayer for relief such as " 'such other relief as the court deems necessary and just' is too amorphous to be a claim for money damages." *Solomon* v. *Hall-Brooke Foundation, Inc.*, 30 Conn. App. 129, 134, 619 A.2d 863 (1993); see also *Stern* v. *Connecticut Medical Examining Board*, 208 Conn. 492, 501, 545 A.2d 1080 (1988) ("In an ordinary civil case, the general rule is that a prayer for relief must articulate with specificity the form of relief that is sought. . . . A party who fails to comply with this rule runs the risk of being denied recovery." [Citations omitted.]).

[3] By contrast, our Uniform Partnership Act; General Statutes § 34-300 et seq.; expressly permits transferees of a partnership interest to ask a court to dissolve and wind up the affairs of a partnership. See, e.g., General Statutes §§ 34-348 (b) and 34-372 (6). We find this difference significant and strongly suggestive of the fact that the legislature did not intend to provide an assignee of a membership interest in an LLC with the right to wind up the affairs of the LLC.

[4] The plaintiff has also claimed that he is classically aggrieved under the common law or principles of equity, but we disagree. The act permits "principles of law and equity [to] supplement" the act only to the extent that they are not "displaced" by the act's provisions. General Statutes § 34-242 (b). Thus, even if we assume, for the sake of argument, that the common law or equitable principles would otherwise grant an assignee standing to seek a winding up of an LLC's affairs, we nevertheless conclude that these principles are displaced by the provisions of the act discussed previously herein that expressly limit an assignee's role and prevent an assignee from forcing the dissolution or winding up of the LLC.

In support of this claim, the plaintiff cites the Delaware Chancery Court decision in *In re Carlisle Etcetera LLC*, 114 A.3d 592 (Del. Ch. 2015), but we find that decision inapposite because Delaware law concerning assignments of membership interests in an LLC differs markedly from that in Connecticut. Under Delaware law, an assignment leaves both the member and the assignee without the power to assert the rights of membership at issue unless and until the assignee is admitted to membership Id., 597–601. The court in *In re Carlisle Etcetera LLC* resolved this lacuna by granting equitable standing to the assignee. Id., 601–607. Connecticut law, by contrast, does not result in a similar void because the assignor continues to hold the exclusive power to exercise the rights of membership until the assignee becomes a member. General Statutes §§ 34-170 (a) (4) and 34-172 (d).

———————————————