******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## N.E. CONSTRUCTION COMPANY, LLC v. BRANDON ANTON ET AL.
### (AC 47951)

Alvord, Moll and Clark, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment dismissing its action for lack of subject matter jurisdiction following its grant of the defendants' motion to dismiss. The plaintiff, a voluntarily dissolved limited liability company, claimed that the court improperly concluded that it lacked standing because it failed to demonstrate that it had brought its action as part of its winding up process. *Held*:

The trial court erred in granting the defendants' motion to dismiss, as the plaintiff was not required to plead and did not fail to demonstrate that it brought this action as part of the process of winding up its affairs pursuant to a provision (§ 34-267a) of the Connecticut Uniform Limited Liability Company Act (§ 34-243 et seq.), as the language of § 34-267a clearly and unambiguously authorized a dissolved limited liability company to prosecute and defend civil actions as part of the winding up process, there was nothing in that statute or the broader statutory scheme that suggested the legislature intended to impose the requirement that an entity must plead its dissolution and winding up status when initiating litigation, and § 34-267a does not impose a strict time limitation on a limited liability company's authority to wind up its activities and affairs.

Argued January 20—officially released June 16, 2026

*Procedural History*

Action to recover damages for, inter alia, conversion, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Graff, J.*, granted the motion to dismiss filed by the named defendant et al. and rendered judgment of dismissal as to all defendants, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Beth A. Steele*, for the appellant (plaintiff).

*Drzislav Coric*, with whom was *Brandon H. Marley*, for the appellees (defendants).

*Opinion*

CLARK, J. The plaintiff, N.E. Construction Company, LLC, appeals from the judgment of dismissal for lack of

subject matter jurisdiction rendered by the trial court in favor of the defendants, Brandon Anton, Daniel Anton, Jr., Garrett Anton, Anton Paving and Construction, LLC, Anton Paving, LLC, Anton Transport, LLC, and Materials & More, LLC. On appeal, the plaintiff claims that the trial court improperly concluded that the plaintiff, a voluntarily dissolved limited liability company, lacked standing because it failed to demonstrate that it brought this action as part of its winding up process.[1] We agree and, accordingly, reverse the trial court's judgment.

The following procedural history is relevant to our resolution of this appeal. On October 10, 2023, the plaintiff filed a ten count complaint against the three individual defendants and four limited liability company (LLC) defendants[2] alleging that the defendants misappropriated certain construction equipment owned by the plaintiff. The complaint alleged that, "[a]t all times mentioned [in the complaint], the plaintiff was a Connecticut limited liability company . . . [and] was the owner of [the construction equipment in question] . . . ." The complaint asserted counts sounding in replevin, conversion, statutory theft in violation of General Statutes § 52-564, unjust enrichment, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes

[1] The plaintiff also claims that the trial court erred by (1) requiring it to plead or otherwise demonstrate its standing because Practice Book § 10-1 provides that "[e]ach pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved," (2) failing to afford it, as a matter of due process, notice of the court's interpretation of General Statutes § 34-267a (b) (2) (B) and an evidentiary hearing to allow it to demonstrate its action was brought during winding up, and (3) failing to treat the motion to dismiss as a motion to strike. In light of our conclusion that the court improperly concluded that the plaintiff did not have standing pursuant to § 34-267a, we need not address the plaintiff's remaining claims.

[2] In the complaint, the plaintiff alleges that Garrett Anton is a member of Anton Paving and Construction, LLC, Daniel Anton, Jr., is a member of Anton Paving, LLC, and Brandon Anton is a member of Anton Transport, LLC, and Materials & More, LLC.

§ 42-110a et seq., and loss of use.[3] By way of relief, the complaint sought, inter alia, the return of the construction equipment, compensatory damages, treble damages, attorney's fees and costs.

On January 4, 2024, the defendants Brandon Anton, Garrett Anton, Anton Paving and Construction, LLC, Anton Transport, LLC, and Materials & More, LLC,[4] filed a motion to dismiss the action and a memorandum of law in support thereof. In their motion, they argued that the court lacked subject matter jurisdiction over the action because the plaintiff was dissolved on January 21, 2020, and ceased to be a legal entity under the Connecticut Uniform Limited Liability Company Act (CULLCA), General Statutes § 34-243 et seq.[5] The defendants attached as an exhibit to their motion to dismiss

[3]In counts one, two, and three, sounding in replevin, conversion and statutory theft, respectively, the plaintiff alleges that, in August 2019, Daniel Anton, Jr., took possession of a Miller curbing machine with the plaintiff's permission but has since refused to return the machine. In counts four, five, and six, sounding in replevin, conversion, and statutory theft, respectively, the plaintiff alleges that, on various dates in November 2019, the defendants Brandon Anton, Daniel Anton, Jr., and/or Garrett Anton took possession of a D-5 HST Caterpillar bulldozer, Thomas ProTough 40 screener, and Stanley vibrating compaction machine without the permission of the plaintiff and have since wrongfully detained the construction equipment. In count seven, the plaintiff alleges unjust enrichment as to all the defendants for the wrongful detention of the aforementioned construction equipment and its use in furtherance of their respective businesses. In counts eight and nine, the plaintiff alleges violations of CUTPA and loss of use against all the defendants for their alleged misappropriation of the aforementioned construction equipment. In count ten, sounding in conversion, the plaintiff alleges that, in October 2019, Brandon Anton stole a Kobelco excavator from the plaintiff and returned it upon demand, but that the excavator was returned inoperable.

[4]Although only Brandon Anton, Garrett Anton, Anton Paving and Construction, LLC, Anton Transport, LLC, and Materials & More, LLC, filed the motion to dismiss, the court dismissed the action in its entirety as to all the defendants on the ground that the plaintiff lacked standing. For ease of reference, we refer to the motion to dismiss as the defendants' motion to dismiss.

[5]The defendants also argued that the plaintiff's claims were barred by the applicable statutes of limitations. The court rendered judgment solely on the ground of standing, and the defendants have not raised the statutes of limitations as an alternative ground for affirmance.

a copy of a Certificate of Dissolution from the Office of the Secretary of the State indicating that the plaintiff had been dissolved on January 21, 2020.[6]

On January 25, 2024, the plaintiff filed an objection to the defendants' motion to dismiss, a supporting memorandum of law, and an affidavit. The plaintiff argued, inter alia, that it had standing as a dissolved LLC to bring the action pursuant to General Statutes § 34-267a, which expressly authorizes a dissolved LLC to prosecute or defend civil actions in winding up its activities and affairs.[7]

On August 6, 2024, the court, *Graff, J.*, issued a memorandum of decision granting the defendants' motion to dismiss the plaintiff's complaint in its entirety for lack of subject matter jurisdiction. In its memorandum, the court first explained that, "[b]ecause the issue of standing implicates subject matter jurisdiction, it may be a proper basis for granting a motion to dismiss. . . . [T]he plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised. . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Citations omitted; internal quotation marks omitted.) The court then concluded that the plaintiff did not have standing to bring this action because, although "[u]nder the clear language of [§ 34-267a (b) (2) (B)], a dissolved limited liability company can file an action during the winding up process," in the present case, "the plaintiff has not demonstrated that this action, which was filed

---

[6]In its objection to the motion to dismiss, the plaintiff argued that the exhibit was not authenticated and should not be considered. In the trial court's memorandum of decision, the court took judicial notice of the certificate of dissolution as a public record. The plaintiff does not challenge on appeal the court's taking of judicial notice and does not challenge its findings concerning whether or when it filed the certificate of dissolution.

[7]Argument on the motion to dismiss took place on April 29, 2024, before the court, *Graff, J.* The defendants' counsel did not appear for argument. The plaintiff's counsel presented an argument in opposition to the motion to dismiss.

in 2023, was filed during the winding up process." As a result, the court entered a judgment of dismissal of the entire action on the ground that the plaintiff had "failed to meet its burden of demonstrating that it has standing and that the court has jurisdiction over this matter." This appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the standard of review and legal principles that govern our analysis. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss [is] de novo. . . . The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . If a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Citation omitted; internal quotation marks omitted.) *Rubin* v. *Brodie*, 228 Conn. App. 617, 630–31, 325 A.3d 1096 (2024).

The question of whether the plaintiff has standing to bring its claims under CULLCA presents an issue of statutory construction and therefore is one over which

this court's review is plenary. See *Styslinger* v. *Brewster Park, LLC,* 321 Conn. 312, 316, 138 A.3d 257 (2016) ("[t]he question of whether the plaintiff, as assignee of a membership interest in an LLC, has standing to bring his claims under [The Connecticut Limited Liability Company Act (CLLCA)],[8] presents an issue of statutory construction, also a question of law over which our review is plenary" (footnote added)); see also *Saunders* v. *Briner,* 334 Conn. 135, 157, 221 A.3d 1 (2019) ("[t]he issue of whether the CLLCA authorizes a member or manager of a limited liability company to bring a derivative action on its behalf presents a question of statutory interpretation, over which we exercise plenary review, guided by well established principles regarding legislative intent").

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . It is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Internal quotation marks omitted.) *Rubin* v. *Brodie,* supra, 228 Conn. App. 637.

Under CULLCA "[a] limited liability company has the capacity to sue and be sued in its own name and the power to do all things necessary or convenient to carry on its activities and affairs." General Statutes § 34-243h (a). In addition, § 34-267a provides in relevant part: "(a) A dissolved limited liability company shall wind up its activities and affairs and, except as provided in section

[8]The CLLCA was the predecessor to CULLCA. See *Rubin* v. *Brodie,* supra, 228 Conn. App. 634.

34-267b,[9] the company continues after dissolution only for the purpose of winding up.

"(b) In winding up its activities and affairs, a limited liability company: **(1)** Shall: **(A)** Promptly after the dissolution, deliver to the Secretary of the State for filing a certificate of dissolution stating the name of the company and that the company is dissolved; and **(B)** discharge the company's debts, obligations and other liabilities, settle and close the company's activities and affairs, and marshal and distribute the assets of the company; and **(2)** may: **(A)** Preserve the company activities, affairs and property as a going concern for a reasonable time; **(B)** *prosecute and defend actions and proceedings*, whether civil, criminal or administrative; **(C)** transfer the company's property; **(D)** settle disputes by mediation or arbitration; and **(E)** perform other acts necessary or appropriate to the winding up." **(Emphasis added; footnote added.)**

The plaintiff claims that the trial court erred in concluding that it did not have standing to bring its claims under CULLCA because the clear and unambiguous language of §34-267a authorizes a dissolved LLC to prosecute and defend civil actions as part of its winding up process. The plaintiff argues that nothing in that statute or our rules of practice requires a dissolved LLC to plead or somehow demonstrate, beyond the very act of bringing an action following its dissolution, that it is engaged in the process of winding up its affairs. The plaintiff further argues that the text of §34-267a imposes no temporal limitation on prosecuting and defending actions and, therefore, a dissolved LLC does not need to demonstrate that it was bringing an action within a prescribed time period. The defendants counter that, because winding up is the "sole remaining purpose of a dissolved entity's continued existence," it is "implie[d] that the entity must plead its dissolution and winding up status when initiating litigation." Although our analysis differs at

---

[9]General Statutes § 34-267b provides the conditions for reinstatement after dissolution.

points, we agree with the plaintiff that the trial court improperly concluded that it lacked standing to bring this action pursuant to §34-267a.

Section 34-267a (a) provides that an LLC continues after dissolution for the purpose of winding up. Section 34-267a (b)(2)(B), in turn, expressly states that, in winding up its activities and affairs, a dissolved LLC may prosecute and defend civil actions. Thus, the language of §34-267a clearly and unambiguously authorizes a dissolved LLC to prosecute and defend civil actions as part of the winding up process. Nothing in the language in §34-267a or the cases cited by the defendants supports their argument on appeal that the plaintiff's failure to plead that it had dissolved and was in the process of winding up deprived it of standing to prosecute this action.[10] The defendants nevertheless contend that the statute "implies that the entity must plead its dissolution and winding up status when initiating litigation." We are not persuaded.

In addition to failing to identify any important purpose that might be served by such a pleading requirement, the defendants also fail to identify anything in §34-267a or

---

[10]Although the defendants cite a number of decisions that they claim support their argument that a dissolved LLC must plead its dissolution and winding up status to have standing to commence an action, those cases are inapposite. See *Styslinger* v. *Brewster Park, LLC*, supra, 321 Conn. 318, 323 (because CLLCA only allows an assignee to trigger winding up of LLC after dissolution had been brought, court concluded that CLLCA "does not provide an assignee such as the plaintiff with standing to seek the winding up of the affairs of an LLC in the absence of a dissolution of that LLC"); *Brochu* v. *Aesys Technologies*, 159 Conn. App. 584, 595–97, 123 A.3d 1236 (2015) (affirming dismissal of action for failure to prosecute with due diligence under abuse of discretion standard of review where executrix of deceased plaintiff's estate waited more than four years after plaintiff's death to file motion to substitute herself as plaintiff); *Bongiorno* v. *J & G Realty*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-12-6014465-S (March 12, 2019) (plaintiff had standing to bring claims for judicial dissolution and winding up of three defendant LLCs in which she had membership interest but "failed to satisfy the proof required [to trigger] the [judicial] dissolution and winding up of the three LLCs" for mismanagement at trial), aff'd, 211 Conn. App. 311, 272 A.3d 700 (2022).

the broader statutory scheme of CULLCA that suggests the legislature intended to impose such a requirement. On the contrary, a review of CULLCA reveals that, when the legislature intended to impose a pleading requirement, it did so expressly. Indeed, and unlike § 34-267a, other provisions of CULLCA expressly require a party to allege certain facts in order to establish standing. General Statutes § 34-271 (b), for instance, requires that a member bringing a direct action "must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." Similarly, General Statutes § 34-271c requires that, "[i]n a derivative action, the complaint must state with particularity: **(1)** The date and content of the plaintiff's demand and the response by the managers or other members to the demand; or **(2)** why the demand should be excused as futile."

"[W]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *Rubin* v. *Brodie*, supra, 228 Conn. App. 645. The inclusion of such pleading requirements elsewhere in CULLCA and the absence of a similar pleading requirement in § 34-267a therefore leads us to conclude that the legislature did not intend to require a dissolved LLC to plead that it is in the process of winding up in order to have standing to prosecute or defend a civil action.

Although the defendants do not address the issue in their brief, the court itself concluded that the plaintiff lacked standing, not strictly on the basis of its failure to plead in its complaint that it had dissolved and was in the process of winding up its affairs, but because it had failed to "demonstrate" that it was, in fact, in the process of winding up its affairs. Specifically, the court concluded that the plaintiff had "not *demonstrated* that this action, which was filed in 2023, was filed during the winding up process." (Emphasis added.) It is not

clear, however, what additional allegations or evidence the court deemed necessary in order for the plaintiff to make that showing. As noted, §34-267a, itself, expressly authorizes a dissolved LLC to prosecute a civil action for the purpose of winding up its affairs. Moreover, when viewed in the context of the broader statutory scheme governing the winding up process under CULLCA, it is clear that, when a dissolved LLC prosecutes a civil action for the recovery of property or money damages, it is, by definition, doing so as part of the process of winding up its affairs, i.e., attempting to recover property for the benefit of its creditors and members; it is not conducting business as a going concern. See General Statutes §34-267f.[11]

In the portion of its memorandum of decision concluding that the plaintiff had failed to demonstrate that it had brought this action as part of the winding up process, the court observed that this action was filed in 2023. We conclude that the court erred to the extent that it determined that the length of time that had passed between when the plaintiff filed its certificate of dissolution and when it commenced the present action was relevant to whether the plaintiff had standing.

First, §34-267a (a), which provides that "[a] dissolved limited liability company shall wind up its activities and affairs and, except as provided in section 34-267b, the company continues after dissolution only for the purpose

---

[11]General Statutes §34-267f provides in relevant part: "(a) In winding up its activities and affairs, a limited liability company shall apply its assets to discharge its obligations to creditors, including members that are creditors.

"(b) After a limited liability company complies with subsection (a) of this section, any surplus must be distributed in the following order, subject to any charging order in effect under section 34-259b: (1) To members and persons dissociated as members, an amount equal to the respective values of the contributions received by the limited liability company and not returned to each such member and dissociated member; and (2) to members and dissociated members, in shares which are proportionate to their respective transferable interests, except to the extent necessary to comply with any transfer effective under section 34-259a. . . ."

of winding up," imposes no deadline by which a dissolved LLC must complete its winding up process. Second, and unlike other provisions of CULLCA that impose a time limitation on a dissolved LLC's authority to complete certain specific functions associated with the winding up process, § 34-267a (b) includes no temporal limitation on a dissolved LLC's authority to prosecute and defend actions. The preceding subdivision of the same subsection, on the other hand, provides that, in winding up its activities and affairs, a dissolved LLC may "[p]reserve the company activities, affairs and property as a going concern for a reasonable time." General Statutes § 34-267a (b)(2)(A). Preserving a company's activities and affairs as a going concern means to engage in business operations. See Black's Law Dictionary (12th Ed. 2024) p. 831 (defining "going concern" as "[a] commercial enterprise actively engaging in business with the expectation of indefinite continuance"). That is an entirely different activity than prosecuting or defending a lawsuit, and it is not surprising that the legislature would choose to place limitations on a dissolved entity's authority to continue operating as a business following dissolution. The legislature's inclusion of an express limitation on that activity, however, is not evidence of an intent to place a similar limitation on all other activities associated with the process of winding up, particularly where the very next activity listed in the same subdivision of the same subsection of the statute, which is separated in the text by a semicolon, includes no such limitation.

A number of courts from other jurisdictions that have adopted similar versions of the Uniform Limited Liability Company Act (ULLCA)[12] have reached the same conclu-

---

[12]Connecticut is one of a number of states to have adopted the ULLCA, codified as CULLCA. See *Benjamin* v. *Island Management, LLC*, 341 Conn. 189, 205, 267 A.3d 19 (2021); see also Uniform Law Commission, Limited Liability Company Act, Revised, available at https://www.uniform laws.org/committees/community-home?CommunityKey=bbea059c-6853 -4f45-b69b-7ca2e49cf740 (last visited June 11, 2026).

General Statutes § 34-283 of CULLCA provides: "In applying and construing the provisions of the Connecticut Uniform Limited Liability Company Act, consideration must be given to the need to promote

sion. See *Thomas* v. *Clinton*, 607 Fed. Appx. 903, 907 (11th Cir. 2015) ("We also cannot infer that Alabama law requires a dissolved LLC to complete its winding-up procedures within a 'reasonable' time after dissolution. Alabama law provides that the person winding-up a dissolved LLC may, among other things, 'preserve the company business or property as a going concern *for a reasonable time*.' . . . This phrase is separated clearly by semicolons from the other listed winding-up activities, including, in pertinent part, the phrase 'prosecute and defend actions and proceedings' and the phrase 'perform other necessary and appropriate acts.' . . . Under the plain statutory language—and contrary to [the] [p]laintiff's argument—the term 'for a reasonable time' modifies *only* the ability to maintain the LLC's business as a going concern and imposes no time limitation on the performance of the other listed winding-up activities." (Citations omitted; emphasis in original.)); *JerLib Investors, LLC* v. *Cohn & Cohn*, Docket No. 19-cv-06203 (ARW), 2025 WL 4235411, *4 (N.D. Ill. September 29, 2025) (concluding that, because Florida's LLC statute "provides no express temporal limitation on a dissolved LLC's right to prosecute and defend actions" but does "within the same subsection. . . [provide] that a dissolved LLC may '[p]reserve the company's activities, affairs, and property as a going concern *for a reasonable time*' . . . the lack of an express temporal limitation with respect to litigation means there is none" (citation omitted; emphasis in original)), appeal filed (7th Cir. April 7, 2026) (No. 26-1669).

Although other courts have interpreted versions of ULLCA with language comparable to our own to include a temporal limitation on a dissolved LLC's authority to wind up its activities and affairs, including its authority to prosecute and defend civil actions, they generally have inferred such a limitation from other provisions of ULLCA that impose time limitations for the completion

uniformity of the law with respect to its subject matter among states that enact it."

of other activities associated with winding up.[13] As we already have explained, however, the inclusion of a time limitation with respect to one activity is not evidence of an intention to include a time limitation on all activities. To the contrary, and consistent with our conclusion that CULLCA does not require an LLC to plead that it is dissolved and winding up in order to have standing, the inclusion of a time limitation for some activities, but not others, demonstrates that the legislature knew how to impose a time limitation on an activity and did so explicitly when it intended for a time limitation to apply. See *Rubin* v. *Brodie*, supra, 228 Conn. App. 645.

Moreover, a review of the broader statutory scheme governing the winding up process convinces us that the

---

[13]See, e.g., *Dealerwing*, *LLC* v. *Lerner*, Docket No. 21-cv-6429 (KMK), 2024 WL 4252497, *13 (S.D.N.Y. September 19, 2024) (implicitly concluding that Florida LLC statute, which does not include express time restriction on winding up process but "does state that a LLC may preserve property 'as a going concern for a *reasonable* time,'" contains implied reasonable time limitation, but that five years was not unreasonable as a matter of law (emphasis in original)); *AsymaDesign, LLC* v. *CBL & Associates Management, Inc.*, Docket No. 3:21-cv-50374 (IDJ), 2023 WL 3819337, *2–3 (N.D. Ill. June 5, 2023) (reading Illinois LLC statute to imply reasonable time limitation on winding up and granting defendant's motion to dismiss for lack of standing on basis that three years and nine months from dissolution to filing of complaint was unreasonable); *Sienna Court Condominium Assn.* v. *Champion Aluminum Corp.*, 75 N.E.3d 260, 281 (Ill. App. 2017) (concluding that defendant's counterclaim was properly dismissed for lack of standing because, although winding up statute "does not state an exact time limit in which a dissolved LLC must complete winding up," it does state that "[a] person winding up a limited liability company's business may preserve the company's business or property as a going concern *for a reasonable time*" and a "statute should be read as a whole and construed so that no term is rendered superfluous or meaningless" (emphasis in original; internal quotation marks omitted)), rev'd on other grounds, 129 N.E.3d 1112 (Ill. 2018); *Deschamps* v. *Farwest Rock, LTD*, 402 Mont. 15, 18, 19–20, 474 P.3d 1282 (2020) (concluding that "the more than six years between [the plaintiff's] dissolution and the commencement of the lawsuit exceeded a reasonable amount of time for the [plaintiff] to 'wind up' its business affairs" where winding up statute did not specify winding up period because "the statutory framework provides five years in which administratively dissolved LLCs may seek reinstatement," indicating that legislature intended to impose finality upon dissolution and, therefore, winding up should "be similarly limited in duration").

legislature's decision to impose a time limitation on an LLC's authority to conduct some activities but not others is entirely consistent with the overall purpose of the statutes governing the winding up process, which is to provide for an orderly process to cease business operations, liquidate assets, pay creditors, and distribute any remaining assets to members. See Rev. Unif. Limited Liability Company Act (2006) § 702, comment, 6C U.L.A. 138 (2016) (stating that winding up process entails finishing old business, collecting and paying debts, and distributing any remaining assets to members); see also *Campisano* v. *Nardi*, 212 Conn. 282, 289, 562 A.2d 1 (1989) ("[W]inding up is the process of closing out a corporation's business and affairs. The process often involves the liquidation of properties, settlement of claims, provision for the payment of debts following dissolution, and then distribution of what remains of the assets to shareholders or members, or to others entitled to them." (Internal quotation marks omitted.)). It is entirely sensible, for instance, to impose time limitations on a dissolved LLC's authority to continue as a going concern following dissolution because authorizing a dissolved LLC to continue business operations indefinitely would run contrary to the very purposes of dissolution. We can discern no clear purpose, however, that would be served by imposing a time limitation on an LLC's authority to wind up its activities and affairs more generally, including its authority to prosecute and defend claims. Under CULLCA, a dissolved LLC has a duty to liquidate its assets and to use those assets to pay its creditors and make distributions to its members. See General Statutes § 34-267f. Placing a time limitation on a dissolved LLC's authority to prosecute or defend claims, over and above any statutes of limitations or equitable defenses that otherwise may apply, would unnecessarily hinder an LLC's ability to maximize its assets for its creditors and members. Indeed, the only parties that might benefit from such a time limitation are those who may be liable to the LLC. Those parties are already protected from the delays associated with untimely actions by the statutes of limitation or other equitable defenses that

may apply to any claims a dissolved LLC asserts against them. Providing such parties with even more protection against claims brought by a dissolved LLC serves none of the purposes of the winding up process under CULLCA.

Our Supreme Court's precedent concerning the statutes that once governed the winding up process for corporations dissolved by forfeiture lends further support to our conclusion that §34-267a imposes no strict time limitation on an LLC's authority to wind up its activities and affairs. In *Campisano* v. *Nardi*, supra, 212 Conn. 287, the plaintiff homeowners sought to hold the defendant, the sole shareholder of a dissolved corporation, personally liable for breaching a contract that the corporation had entered into prior to its dissolution. Unlike §34-267a, the winding up statute at issue in *Campisano*, General Statutes (Rev. to 1985) §33-378,[14] included language requiring a corporation dissolved by forfeiture to "wind up its business and affairs *as expeditiously as practicable*, and for such purpose it shall continue as a corporation." (Emphasis added.) See id., 288, quoting General Statutes (Rev. to 1985) §33-378 (b). "In pursuit of their claim that corporate forfeiture imposed personal liability upon the defendant [shareholder], the plaintiffs contend[ed] that the defendant's activities, subsequent to his corporation's dissolution for noncompliance with the Connecticut corporation laws, did not constitute the kind of winding up contemplated by our statutes." Id., 287. Specifically, the plaintiffs maintained "that two facts preclude[d] a finding that the defendant was winding up the corporation: first, that the defendant continued working on their home and accepted payments under the contract well beyond the date of dissolution; and second, that the defendant had not yet complied with the notice requirements of the winding up statute, General Statutes [(Rev. to 1985)] §33-379." Id., 289.

Our Supreme Court rejected both claims. With respect to the first claim, the court held that the "fact that the

[14]Section 33-378 was repealed, effective January 1, 1997. See Public Acts 1994, No. 94-186, §214.

defendant sought to complete his existing contractual obligations and accepted payment for the work is entirely consistent with an effort to wind up the corporation. Had he succeeded, he would have eliminated a claim against the corporation, thereby preserving some of the corporation's assets for distribution when he completed the winding up." Id. In rejecting the plaintiff's second claim, the court noted that the purpose of the notice requirements of the winding up statutes was "to inform those having claims against the corporation that its assets will soon be distributed and that any claims that are not asserted will be barred after the distribution." Id. The court further noted that "the notice statute [did] not require that notice be sent within a fixed time, but instead provide[d] for notice to be made [a]t any time after the dissolution of a corporation." (Internal quotation marks omitted.) Id., 290, quoting General Statutes (Rev. to 1985) § 33-379 (d).[15] Importantly for present purposes, and notwithstanding the language in § 33-378 requiring a corporation dissolved by forfeiture to wind up its activities and affairs "as expeditiously as practicable," the court noted that it "*has previously refrained from imposing a strict time limit on the completion of winding up activities. Stolman* v. *Boston Furniture Co.*, 120 Conn. 235, 244, 180 A. 507 (1935); S. Cross, [Corporation Law in Connecticut (1972)], § 9.5, p. 476." (Emphasis added.) *Campisano* v. *Nardi*, supra, 212 Conn. 290.

To infer a time limitation on an LLC's authority to wind up its activities and affairs under § 34-267a, which includes no language limiting the time in which an LLC may exercise that authority, would run contrary to our Supreme Court's interpretation of a similar statute that, on its face, required a corporation dissolved by forfeiture to wind up its activities as soon as practicable. Moreover, although we are mindful of the general maxim that "[w]here a statute imposes a duty and is silent as to when it is to be performed, a reasonable time is implied"; (internal quotation marks omitted) *Jewish Home for the*

---

[15]Section 33-379 was repealed, effective January 1, 1997. See Public Acts 1994, No. 94-186, § 214.

*Elderly of Fairfield County, Inc.* v. *Cantore*, 257 Conn. 531, 540, 778 A.2d 93 (2001); we are not persuaded that the application of that maxim to § 34-267a compels the conclusion that a dissolved LLC ceases to exist and loses its authority to complete the winding up process if the person responsible for winding up the LLC fails to do so within a reasonable time. Rather, we conclude that, to the extent there is an implied duty to wind up an LLC's affairs within a reasonable time, that duty runs to a dissolved LLC's creditors and members who, in some circumstances, may be entitled to seek judicial oversight of the winding up process or the appointment of a different person to wind up the LLC's activities and affairs. See, e.g., General Statutes § 34-267a (e).[16]

Such an interpretation ensures that those with a legal interest in the winding up process are protected, not injured, when a person fails to wind up a company's affairs within a reasonable time. It also is entirely consistent with our conclusion that an LLC does not lack standing to prosecute or defend claims if it fails to do so within a reasonable time. It is not difficult to understand how CULLCA's purposes might be served by requiring a court to determine, upon the application of a member, whether a person responsible for winding up a dissolved LLC's activities should be supervised or replaced for failing to wind up a company's activities and affairs within a reasonable time. For the reasons we have previously discussed, however, we can discern no clear purpose of CULLCA being served by requiring courts to determine, on a case-by-case basis, whether a dissolved LLC has standing to bring or defend an action based on the amount

---

[16]Section 34-267a (e) establishes a process for members to apply to the Superior Court for judicial supervision of the winding up process, including the appointment of a person to wind up the company's activities and affairs. Additionally, the commentary to § 702 (b) of the ULLCA, which is the winding up provision of the ULLCA on which § 34-267a is based, indicates that a delay in winding up may constitute good cause for the purposes of § 34-267a (e). See Rev. Unif. Limited Liability Company Act, § 702, comment, supra, 6C U.L.A. 138 ("[t]he particular circumstances determine how long winding up may continue without giving 'good cause' for court intervention under Section 702 (e)").

of time that may have passed since the LLC filed its certificate of dissolution with the Secretary of the State.

This interpretation also is in accord with how our Supreme Court has applied the maxim inferring a reasonable time limitation for the performance of a statutory duty. In *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, supra, 257 Conn. 532, 540–41, for instance, the plaintiff nursing home brought an action to recover on a probate bond for losses it suffered due to the defendant conservator's failure to pay a ward's expenses to the nursing home within a reasonable time.[17] In concluding that the plaintiff had set forth a cognizable claim on the probate bond, the court examined the statutes governing a conservator's statutory duties to determine whether the plaintiff had sufficiently alleged a breach of those duties. The court observed that General Statutes § 45a-655 provides that a conservator of an estate "shall manage all the estate and apply so much of the net income thereof, and, if necessary, any part of the principal of the property . . . *to pay the ward's debts*" and that General Statutes § 45a-656 imposes on a conservator of a person "the duty to provide for the care, comfort and maintenance of the ward . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 539–40. The court concluded that, although those provisions did not expressly require that those duties be performed within a reasonable time, such a duty was implicit because, "[w]here a statute imposes a duty and is silent as to when it is to be performed, a reasonable time is implied." (Internal quotation marks omitted.) Id., 540. As a result, the court determined that the plaintiff nursing home's allegation that the

---

[17]"[A] probate bond is . . . given to secure the faithful performance by an appointed fiduciary of the duties of his trust and the administration of and accounting for all moneys and other property coming into his hands, as fiduciary, according to law. General Statutes § 45a-139 (a). The fiduciary's faithful performance of his legal duties is the condition on which a probate bond is executed; General Statutes § 45a-139 (b); and, accordingly, the failure of a fiduciary, such as a conservator, to perform those duties faithfully results in a breach of the bond." (Footnote omitted; internal quotation marks omitted.) *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, supra, 257 Conn. 538.

defendant conservator failed to timely pay the ward's expenses to the nursing home, if true, would constitute a breach of the conservator's statutory duties and that the plaintiff nursing home had stated a cognizable claim against the probate bond. Id., 540–41.

Nothing in our Supreme Court's decision in *Cantore* suggests, however, that a conservator's *authority* to pay a ward's expenses is *extinguished* if the conservator fails to make such payments within a reasonable time. Instead, the court held that the conservator could be liable on the probate bond to a party with a legal interest in the performance of the conservator's statutory duty. Similarly, under CULLCA, parties with a legal interest in the proper distribution of a dissolved LLC's assets may be entitled to some form of relief if the person responsible for winding up the LLC fails to do so within a reasonable time. Affected members, for instance, may apply to the Superior Court for judicial supervision of the winding up process or for the appointment of a different person to wind up the company's activities and affairs. See General Statutes § 34-267a (e). Just as it would be contrary to the best interests of a ward and her creditors to interpret the conservatorship statutes to extinguish a conservator's authority to act if he or she fails to do so within a reasonable time, interpreting CULLCA to extinguish an LLC's authority to wind up its affairs and activities, including its authority to prosecute and defend claims, if the LLC fails to do so within a reasonable time would be contrary to the best interests of the intended beneficiaries of the winding up process.

For the foregoing reasons, we conclude that the plaintiff was not required to plead and did not fail to demonstrate that it brought this action as part of the process of winding up its affairs under § 34-267a. Accordingly, the trial court erred in granting the defendants' motion to dismiss.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.